# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 20, 2000 Session

### IN RE: PAUL'S BONDING COMPANY, INC.

**Appeal from the Criminal Court for Davidson County**
**Nos. 97-D-2152, 97-D-2354, 98-B-1151     J. Randall Wyatt Jr., Judge**

---

### No. M1999-02528-CCA-R3-CD - Filed February 16, 2001

---

The appellant, Paul's Bonding Company, Inc., appeals the judgments of the Davidson County Criminal Court ordering complete forfeiture of bail bonds in the cases of criminal defendants Carlos Ramon Ruiz and Castulo Morales Vasquez and partial forfeiture of the bail bond in the case of criminal defendant Reyes Castro. Following a review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. Code Ann. § 16-5-108(a)(2) (1997)[1]; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Joel H. Moseley, Nashville, Tennessee, for the appellant, Paul's Bonding Company, Inc.

Paul G. Summers, Attorney General and Reporter, Marvin Clements, Jr., Assistant Attorney General, Victor S. Johnson, III, District Attorney General, and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

The instant case arose in 1998 from three separate criminal cases in which the State charged Reyes Castro with one count of possession of a Schedule II controlled substance with intent to deliver; Carlos Ramon Ruiz with one count of possession of more than one-half gram of a Schedule II controlled substance;[2] and Castulo Morales Vasquez with one count of criminal attempt to commit extortion. The trial court set the following bail amounts in each case: fifty thousand

---

[1] See Columbia Bonding Co. v. State, 476 S.W.2d 633, 633-634 (Tenn. 1972)(interpreting the predecessor statute to Tenn. Code Ann. § 16-5-108(a)(2)); see also Indemnity Ins. Co. of North America v. Blackwell, 653 S.W.2d 262, 264-265 (Tenn. App. 1983).

[2] Contrary to the minutes of the Davidson County Criminal Court, Ruiz's application for bail bond indicates that he was charged with possession of more than one-half gram of a Schedule II controlled substance with intent to sell.

dollars ($50,000) in the case of Reyes Castro; ten thousand dollars ($10,000) in the case of Carlos Ramon Ruiz; and ten thousand dollars ($10,000) in the case of Castulo Morales Vasquez. The appellant, Paul's Bonding Company, Inc., agreed to secure the appearance of each defendant. Subsequently, however, the defendants failed to appear at scheduled court hearings, and the trial court entered conditional judgments of forfeiture against the appellant, also issuing capiases for the defendants and writs of scire facias. Upon service of the writs of scire facias and in response thereto, the appellant petitioned the court for relief from the conditional judgments of forfeiture pursuant to Tenn. Code Ann. § 40-11-204 (1997), asserting in the petitions that the defendants had fled to Mexico. The trial court conducted a hearing on the appellant's petitions on September 8, 1999.

At the hearing, the appellant's attorney, Joel H. Moseley, initially noted that a former bail bond agent and employee of the appellant named James E. Ferrell had processed the Castro and Ruiz bail bonds. The appellant and the State agreed that both Ferrell and another bail bond agent, Peggy Coleman, were arrested on December 11, 1998, by the "Metropolitan Vice Squad" and charged with money laundering and submitting false death certificates to the court during the course of their employment by the appellant. Moseley asserted that he had subpoenaed Ferrell as a witness, but Ferrell intended to invoke his privilege against self-incrimination. The trial court nevertheless required Ferrell to take the witness stand and answer any questions that would not implicate his privilege. Acting upon advice from his attorney, Ferrell only answered purely preliminary questions concerning his identity and former occupation.

Notwithstanding Ferrell's refusal to testify, the appellant introduced into evidence copies of the bail bond applications and agreements executed by the three defendants at issue. With respect to the Castro and Vasquez bail bonds, the appellant presented the testimony of Mark Nelson, the appellant's supervising bail bond agent. Nelson confirmed that Ferrell had processed the Castro bail bond and further noted that the paperwork in the Castro case appeared to have been completed in accordance with the appellant's policies. Nelson also testified that he had himself processed the Vasquez bail bond in accordance with those policies. He recalled that Vasquez was referred to him by Carlos Rodriguez, a friend of Vasquez, and Tina Fitzpatrick, the mother of Vasquez's child and a co-principal. He asserted that Rodriguez and Fitzpatrick had previously referred defendants to him, and, indeed, he had processed bail bonds for Rodriguez and Fitzpatrick themselves. According to Nelson, they had always been reliable. Nelson conceded, however, that Fitzpatrick and another co-principal, Alberto Vasquez,[3] possessed few financial resources.

With respect to the Ruiz bail bond, the appellant presented the testimony of Jason K. Doolittle, a former bail bond agent and employee of the appellant. Doolittle confirmed that Ferrell had also processed the Ruiz bail bond, although Doolittle had provided some minimal assistance to Ferrell. Doolittle noted that Ruiz was referred to Ferrell by Joey Herrera, a bail bond agent in Houston, Texas, with whom Doolittle had previously conducted business.

---

[3]Although Alberto is listed as a co-principal on Vasquez's bail bond application, his signature is not affixed to the bail bond agreement.

In addition to Doolittle's testimony, Moseley asserted to the court that he had deposed Anna Louise Gomez, a co-principal in the Ruiz case. Moseley did not attempt to introduce into evidence this deposition or otherwise present Gomez's testimony. Nevertheless, Moseley remarked to the court that both Gomez and her husband, who was also a co-principal in the Ruiz case, were United States citizens and, at the time of the execution of the Ruiz bail bond, had owned a "brick laying business." According to Moseley, this business had since failed, and Gomez's husband was currently residing in Mexico and working as a "day laborer." Gomez herself was insolvent.

The appellant adduced no evidence at the September 8, 1999 hearing concerning the defendants' nationality, although it was essentially undisputed that the defendants were Mexican citizens and that the appellant was aware of the defendants' nationality at the time of the execution of the bail bonds. In any event, the bail bond application in the Castro case indicated Castro's employment by Davidson Construction Company in Alexandria, Virginia. The appellant also introduced into evidence a June 1, 1998 letter from Manganero Corporation in Beltsville, Maryland to Joey Herrera in Houston, Texas, confirming Castro's employment by that corporation. The Vasquez bail bond application reflected Vasquez's employment by a local Red Lobster Restaurant. The Ruiz bail bond application reflected no current employment.

As to the location of the defendants at the time of the September 8, 1999 hearing, the appellant also failed to adduce evidence in support of its contention that both Castro and Ruiz had absconded to Mexico. Moseley noted that Gomez had stated in her deposition that Ruiz was residing in Mexico. The State, however, refused to stipulate Ruiz's location. The appellant did elicit testimony from Nelson concerning Vasquez's location. Specifically, Nelson testified that, due to his efforts to locate and apprehend Vasquez, he learned that the defendant had fled to Mexico. According to Nelson, he obtained Vasquez's address and telephone number in Mexico from Vasquez's co-principals. He then called Mexico and confirmed Vasquez's location in that country.

As to the appellant's attempts to retrieve the three defendants from Mexico, Moseley noted to the trial court that his client had entered into bail bond agreements with the defendants in reliance upon an existent extradition treaty between the United States and Mexico. Indeed, following the defendants' flight, the appellant contacted the Office of the District Attorney General concerning the possibility of initiating extradition proceedings against the defendants. However, the appellant learned that, as a practical matter, the extradition treaty between the United States and Mexico is unenforceable. In this regard, the appellant introduced into evidence a July 1, 1999 letter from Assistant District Attorney General John C. Zimmerman to Moseley confirming the futility of seeking the extradition of fugitives from Mexico. Zimmerman also conceded at the hearing that, "if you go across the border and stay in Mexico, you're not going to be extradited, period. They're not going to send you across the border." Moreover, the appellant introduced into evidence an August 8, 1999 newspaper article excerpted from The San Diego Union-Tribune noting the reluctance of Mexican authorities to extradite Mexican citizens to the United States and further noting the 1993 revision of the extradition treaty between the United States and Mexico outlawing "cross-border abductions" of criminal suspects by bounty hunters or bail bond agents.

Finally, Moseley noted that his client's efforts to recapture the defendant Castro had been hampered by an on-going criminal investigation conducted by the State. Specifically, Moseley introduced into evidence correspondence between himself and Zimmerman in which Moseley recalled the State's request that the appellant withhold any attempts to apprehend Castro for the duration of a "vice-squad operation." It is unclear from the record before this court whether this "vice-squad operation" was part of the State's investigation of the appellant's bail bond agents or constituted a separate investigation. In any event, Moseley asserted at the hearing that Castro was able to abscond to Mexico due to the appellant's cooperation with the State.

The State declined to introduce evidence at the hearing but, without objection by the appellant, asked the trial court to take judicial notice of prior proceedings before the trial court in the Castro case. Specifically, the prosecutor made the following remarks:

> [T]he Court will note from this file that . . . this bond's history here has a history before Your Honor.
>
> Mr. Castro's bond first came into this court on a motion to increase the bond filed by the State, and the Court did increase the bond to, I believe, fifty thousand dollars in this case in November of '97.
>
> The defendant, Reyes Castro, failed to appear in this court on the discussion date of May 14th of 1998. And Ms. [Peggy] Coleman, who was the representative of the bonding company, who always appeared in court, Mr. Ferrell never came to court, not because that's shirking his duties but it was the company who set up the business that Ms. Coleman, . . . vice president of the company, she always was the one who appeared in court.
>
> And Ms. Coleman advised this Court on that day that she had notified the defendant and that the defendant had then told them that his defense lawyer said that he didn't need to be here.
>
> If Your Honor will recall, Mr. Stuart Caulkins at that time was the defense lawyer. And Mr. Caulkins, himself, did not show up in court. But the Court nevertheless issued a capias for Mr. Castro.
>
> He was - - he was surrendered by the bonding company and placed in jail in May of 1998. I don't have that specific date written on my file. But on May the 27th of 1998, Ms. Coleman came in here and initially said that she wanted to be relieved from the bond.
>
> And then had some discussions, further discussions, with the defendant, and the Court, she wasn't sure that she wanted to go off bond, she said she wanted to check into a few matters. But the Court

-4-

nonetheless suspended the bond, preventing the defendant from making the bond with a different bonding company.

It was continued for a couple of days while Ms. Coleman checked into a few matters, and then continued until June the second.

We came back into this courtroom on June the second and Ms. Coleman said at that time she was satisfied of certain matters she was checking in to, that she was satisfied with the things that had given her concern, although she did not articulate to the judge or to the Court what those were, and on June second Your Honor allowed Mr. Castro back out on the fifty thousand dollar bond and Paul's Bonding Company said after further verification they were now satisfied and the case was set for trial.

And Mr. Castro, who appeared to be from Virginia, according to Ms. Coleman she had checked into his employment, she had checked into whoever she was checking into in Virginia, and was satisfied. And that was that.

And those are matters that appeared before the Court and that the Court is going to be able to glean from the record if the Court looks at it.

Following the hearing, the trial court ordered complete forfeiture of bail bonds in the Ruiz and Vasquez cases, observing in both cases that "the bonding company knew the defendant was a Mexican Citizen, had ample opportunity to investigate the co-principal's reliability, and decided to write the bond. This was a business risk that to the bonding company's peril, did not work out." The trial court ordered only partial forfeiture of the bail bond in the Castro case, noting "unusual circumstances that should be considered in this matter." Specifically, the court found that

the agent who wrote the bond, James M. Ferrell, and the agent who requested the Court reinstate Paul's Bonding Company on the defendant's bond, Peggy Coleman, are currently under indictment for alleged illegal activities concerning bonding matters for Mexican citizens. The company itself has apparently given its cooperation to the State, which is acknowledged by the State, in connection with these charges against the agents. This has hindered the ability of Paul's Bonding Company to acquire information from said agents and to obtain their testimony in connection with the circumstances surrounding this bond.

This Court is of the opinion, therefore, that due to the efforts of Paul's Bonding Company to attempt to locate the defendant, without any

assistance from the aforementioned agents who wrote the bonds, that some consideration should be given to Paul's Bonding Company under the particular facts and circumstances as set forth above.

## II. Analysis

The appellant now appeals the trial court's judgments of forfeiture, asserting that the trial court abused its discretion by failing to completely remit forfeiture of the Castro bail bond and by failing to reduce forfeiture of the Ruiz and Vasquez bail bonds by eighty percent (80%). First, with respect to all three cases, the appellant cites State v. Shredeh, 909 S.W.2d 833 (Tenn. Crim. App. 1995), and argues that the existence of an extradition treaty between the United States and Mexico warrants relief as the treaty lulled the bonding company into a "false sense of security." Second, the appellant argues that its inability to acquire information or testimony from Ferrell and Coleman warrants relief, not only in the Castro case, but also in the Ruiz case. Third, the appellant argues that its suspension of efforts to apprehend Castro at the request of the State warrants relief in the Castro case. Fourth and finally, the appellant argues that Nelson's "due diligence" in processing the Vasquez bail bond warrants relief in the Vasquez case.

The forfeiture of bail bonds is governed by Tenn. Code Ann. § 40-11-201 through § 40-11-215, the requirements of which statutory provisions are largely reflected in the trial court proceedings in the instant cases. Specifically, Tenn. Code Ann. § 40-11-201(a) (1997) authorizes a trial court to enter a conditional judgment of forfeiture against a defendant and his sureties when a defendant fails to appear in court in accordance with a bail bond agreement. Upon the entry of a conditional judgment, the trial court must additionally issue a writ of scire facias requiring the defendant and his sureties to show cause why the judgment should not become final. Tenn. Code Ann. § 40-11-202 (1997). To this end, the trial court must afford the defendant and his sureties a hearing prior to final forfeiture. Indemnity Ins. Co. of North America v. Blackwell, 653 S.W.2d 262, 264 (Tenn. App. 1983). At this hearing, a surety or bonding company may petition the court for relief from forfeiture. However, the surety bears the burden of proving that its petition should be granted. See, e.g., State v. Roger Martin/Liberty Bail Bond Company, No. 02C01-9710-CR-00402, 1998 WL 414713, at *2 (Tenn. Crim. App. at Jackson, July 24, 1998).

A surety may be exonerated from forfeiture by its surrender of the defendant to the court at any time before payment of the judgment of forfeiture. Tenn. Code Ann. § 40-11-203 (1997). Otherwise, the surety must seek relief pursuant to Tenn. Code Ann. § 40-11-204. That statutory provision provides that

> the judges of the general sessions, circuit, criminal and supreme courts may receive, hear and determine the petition of any person who claims relief is merited on any recognizances [or bail bonds[4]] forfeited, and so lessen or absolutely remit the same, less a clerk's commission . . . , and do all and everything therein as they shall deem

---

[4] See State v. William Bret Robinson., No. E1999-00950-CCA-R3-CD, 2000 WL 1211316, at *2 (Tenn. Crim. App. at Knoxville, August 28, 2000)(defining "recognizance" within the meaning of Tenn. Code Ann. § 40-11-204(a)).

just and right, and consistent with the welfare of the state, as well as the person praying such relief.

Id. at (a).

This court has previously observed that a trial court's discretion under Tenn. Code Ann. § 40-11-204 is "broad and comprehensive, empowering trial courts to make determinations 'in accordance with [their] conception of justice and right.'" Shredeh, 909 S.W.2d at 835 (quoting Black v. State, 290 S.W. 20, 21 (Tenn. 1927)); see also State v. William Bret Robinson, No. E1999-00950-CCA-R3-CD, 2000 WL 1211316, at *3 (Tenn. Crim. App. at Knoxville, August 28, 2000)("Determinations concerning the exoneration of bond forfeitures fall within the discretion of the trial court."). Accordingly, in reviewing the trial court's determinations in the instant cases, we apply an abuse-of-discretion standard. Robinson, No. E1999-00950-CCA-R3-CD, 2000 WL 1211316, at *3. Under an abuse-of-discretion standard, this court grants the trial court the benefit of its decision unless the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997); see also State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

Of course, in order to determine whether the trial court in these cases applied an incorrect legal standard, we must define the correct legal standard. In this regard, our supreme court and this court have narrowly circumscribed the circumstances in which a trial court possesses the authority to grant relief pursuant to Tenn. Code Ann. § 40-11-204. We acknowledge the apparent contradiction in limiting a trial court's "broad and comprehensive" discretion to make determinations in accordance with its conception of justice and right to a small number of circumstances. Nevertheless, citing our supreme court's decision in State v. Frankgos, 85 S.W. 79, 80-81 (Tenn. 1905), we have stated that

[t]he authority to relieve sureties from liability may only be exercised in extreme cases, such as the death of the defendant or some other condition making it impossible for sureties to surrender the defendant; the good faith effort made by the sureties or the amounts of their expense are not excuses.

Shredeh, 909 S.W.2d at 836; see also State v. Le Quire, 672 S.W.2d 221, 222-223 (Tenn. Crim. App. 1984). Our supreme court in Frankgos, 85 S.W. at 81, explained that "[t]o relieve sureties upon [lesser] grounds . . . would encourage defendants to forfeit their bail, and bring about a very lax administration of the criminal laws of the state."

Applying the above legal standard, we preliminarily note that the trial court was clearly correct in refusing to grant relief to the appellant in the Vasquez case on the basis of any "due diligence" exercised by the appellant's bail bond agent. Again, "[g]ood faith is not involved." Id. The exercise of due diligence by bail bond agents in processing bail bonds is expected as a matter of due course and does not constitute an extraordinary or "extreme" case warranting relief under Tenn. Code Ann. § 40-11-204. Additionally, the trial court correctly declined to grant relief to the appellant in all three cases on the basis of the defendants' flight to Mexico and the impossibility of

-7-

extraditing the defendants from Mexico. In so holding, we agree with the appellant that our decision in Shredeh is controlling but differ with the appellant's interpretation of that case.

In Shredeh, 909 S.W.2d at 834, the appellant bonding companies secured the appearance of a criminal defendant charged with aggravated assault, aggravated kidnapping, and unlawful possession of a weapon. At least one of the bonding companies entered into a bail bond agreement with the defendant fully aware that he was a citizen of Jordan. Id. at 834-836. Subsequently, the defendant failed to appear in court on his scheduled trial date, having fled to Jordan. Id. at 834. At that time, the bonding companies discovered that the United States did not have an extradition treaty with Jordan. Id. at 835. Additionally, the State Department indicated that it could not protect bail bond agents from prosecution in Jordan if they traveled to that country and attempted to forcibly return the defendant to the United States. Id. The bonding companies petitioned the trial court for relief from forfeiture. Id. at 834. This court recounted that, "[b]ecause the trial court determined that the bonding companies had exercised some diligence, but not enough, before undertaking the risks on such serious charges, it ordered sixty percent of the amount of the bond to be forfeited." Id. at 836. The bonding companies appealed the decision of the trial court, arguing that they should have been entirely relieved of liability due to the lack of any extradition treaty between the United States and Jordan. Id. at 835. This court rejected the bonding companies' argument, holding that, under the facts of that case, the lack of an extradition treaty did not constitute the kind of "extreme case[]" contemplated by our supreme court in Frankgos. Id. at 836. Contrary to the assertion of the appellant in the instant cases, the State in Shredeh did not challenge nor did this court address the propriety of the trial court's ruling in granting even partial relief to the bonding companies.

Accordingly, just as we held in Shredeh that the lack of an extradition treaty between the United States and Jordan did not warrant relief under Tenn. Code Ann. § 40-11-204, we now hold that the lack of an *enforceable* extradition treaty between the United States and Mexico does not warrant relief. If the appellant did not know the difficulties inherent in recapturing fugitives who have fled to Mexico, it was the appellant's business to obtain the relevant information prior to entering into bail bond agreements with Mexican citizens. Nothing in the record before this court suggests that the relevant information was unavailable to the appellant at the time of the execution of the bail bonds at issue. Indeed, Moseley conceded at the September 8, 1999 hearing that the appellant could have obtained the information through adequate investigation.

Having concluded that neither the exercise of due diligence by the appellant's bail bond agent in the Vasquez case nor the lack of an enforceable extradition treaty between the United States and Mexico in all three cases warranted relief, we next turn to the appellant's claim that its inability to obtain information or testimony from Ferrell and Coleman warranted relief in the Ruiz case in addition to the Castro case. Arguably, the indictment and prosecution of Ferrell and Coleman constitute an "extreme" case in the sense that these circumstances are, perhaps, unusual and likely rendered more difficult the appellant's search for Ruiz and Castro. Nevertheless, as a matter of public policy, we decline to hold that the indictment of a bonding company's bail bond agents for criminal activities conducted during the course of their employment and the agents' consequent

unavailability qualify to relieve a bonding company of liability under Tenn. Code Ann. § 40-11-204. A contrary result would effectively discourage the close supervision of bail bond agents by their employers. Accordingly, we cannot say that the trial court erred in denying the appellant relief on this ground in the Ruiz case.

Finally, the trial court did not err in failing to entirely remit forfeiture of the Castro bail bond. In the Castro case, the appellant asserted and the trial court found that the appellant had suspended its efforts to apprehend Castro "in order to aid the State authorities in an on-going criminal investigation." We must conclude that an affirmative request by the State to a bonding company to forego efforts to apprehend a defendant and the defendant's resultant escape is precisely the type of "extreme" case contemplated by our supreme court in Frankgos. However, the appellant failed to adduce any evidence that Castro eluded capture due to the appellant's cooperation with the State and instead relied upon the bald statements of its attorney. Under these circumstances, we are unwilling to say that the trial court abused its discretion.

**III.**

For the foregoing reasons, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE