IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 23, 2002 at Knoxville

## STATE OF TENNESSEE v. HOWARD C. COVINGTON
## IN RE: MEMPHIS BONDING COMPANY

**Appeal from the Criminal Court for Shelby County**
**No. 00-03328, 00-04256, 00-0147894, 00-145438     Carolyn Wade Blackett, Judge**

_____

**No. W2001-01575-CCA-R3-CD  - Filed July 16, 2002**

_____

Memphis Bonding Company appeals the Shelby County Criminal Court's order denying its petitions for exoneration of liability for the defendant Howard C. Covington's bail bonds for various offenses. Because the record fails to reflect that this case is properly before us as a rightful appeal, we dismiss the appeal.

**Tenn. R. App. P. 3; Appeal Dismissed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Michael J. Gatlin, Memphis, Tennessee, for the Appellant, Howard C. Covington.

Paul G. Summers, Attorney General & Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Kimkea Harris, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The defendant has various theft and drug-related indictments and non-indicted charges pending against him in Shelby County.  Memphis Bonding Company underwrote various appearance bonds relative to these charges on the defendant's behalf.  After the defendant failed to appear in court and a warrant was issued for his arrest, Memphis Bonding filed four petitions for exoneration, one for each of the four indicted cases.[1]  The petitions alleged that after being notified that the defendant had failed to appear, Memphis Bonding searched for the defendant; the defendant

_____

[1]Memphis Bonding's attorney stated at the hearing on the petitions that six petitions had been filed; however, only four appear in the appellate record.

was eventually arrested and was confined in the Shelby County Jail. At the subsequent hearing, Memphis Bonding orally requested exoneration on two additional cases that were as yet unindicted.[2]

The trial court conducted a hearing at which the issues before it were whether the defendant should be released from custody and his bonds reinstated and whether Memphis Bonding should be exonerated on the previously contracted bonds. The defendant testified and admitted failing to appear in court on multiple occasions and being late for court on other occasions. He claimed that the first time he failed to appear, the notice was sent to the wrong address. He claimed that he appeared on the next date, but when his attorney did not come to court, he went to find him. Despite assurances that the attorney would come to court, he never arrived, and the defendant waited outside the courtroom all day. The defendant acknowledged that he did not go into the courtroom without his attorney because he knew he would be taken into custody for the previous failure to appear. The defendant was disaffected with his attorney, and rather than rectifying his failures to appear by turning himself in to the authorities, he worked toward raising money to hire a different attorney. After approximately five and one-half months "on the lam," he was taken into custody. He claimed that he surrendered himself by calling an employee of the bonding company and then surrendering to the bounty hunters who came to get him. The defendant asked that the court reinstate his bond, and he promised to appear for future hearings.

Memphis Bonding presented the testimony of its office manager and vice president, William Rainey. Mr. Rainey testified that the bonding company through its agents had attempted to locate the defendant by going to the address listed on a bond application, but he was not to be found, and the defendant's relatives and friends were not helpful. Likewise, the agents were unable to locate the defendant at his listed place of employment. Eventually, an informant who was disenchanted with the defendant divulged his location, and bounty hunters apprehended him there. Mr. Rainey asked the court to exonerate Memphis Bonding on the bonds based upon the defendant's failure to live up to his contractual obligation pursuant to the bonds to appear as scheduled in court.

After hearing the evidence, the court denied both the defendant's motion to reinstate bond and the bonding company's petitions for exoneration. Memphis Bonding has appealed the latter determination.

In the proceedings below, Memphis Bonding claimed exoneration was appropriate under Code sections 40-11-203 *et seq.* Section -203 provides

>   (a)    After the liability of the bail bondsman or surety has become fixed by forfeiture, and before payment, the bail bondsman or surety may be exonerated from the liability by the surrender of the defendant and the

---

[2]As stated in note 1 above, counsel claimed that petitions had been filed in all six cases. Without those petitions before us, we are unable to know whether they were filed as asserted in counsel's argument. *See, e.g., State v. Electroplating, Inc.*, 990 S.W.2d 211, 224 (Tenn. Crim. App. 1998) (statements of counsel are not evidence).

payment of all costs; but may be exonerated from costs also if, in the opinion of the court, the bail bondsman or surety has been in no fault.

(b)     It is left to the sound discretion of the court whether the bail bondsman or surety shall be relieved from the liability of bail to any and to what extent.

Tenn. Code Ann. § 40-11-203 (1997). In its appellate brief, Memphis Bonding claims that exoneration for the indicted cases should lie under section 40-11-203, and for the unindicted cases under section 40-11-132. The latter provides

At any time, the bail bondsman or surety may surrender the defendant in their exoneration, or the defendant may personally surrender to the officer. Surrender by a bail bondsman or surety shall be for good cause, including, but not limited to, the following:

(1)     The defendant has violated the contractual provisions between defendant and bondsman;

(2)     The bondsman or surety has good cause to believe the defendant will not appear as ordered by the court having jurisdiction;

(3)     A forfeit, conditional or final, has been rendered against the defendant;

(4)     The defendant has failed to appear in court either as ordered by the court or as commanded by any legal process; or

(5)     The defendant has been arrested while on bond.

Tenn. Code Ann. § 40-11-132 (Supp. 2001).[3]

Upon review of the appellate record, it is immediately apparent that this court has not been provided with all of the documents and information necessary for an adjudication on the merits of this case. This appeal purports to be one "as of right" under Tennessee Rule of Appellate Procedure 3. *See generally* Tenn. R. App. P. 3 (allowing appeals as a matter of course from final judgments and in certain other enumerated circumstances). The record transmitted to this court, however, does not reflect that the orders from which Memphis Bonding has appealed have the character of final judgments. The documents certified to this court from the trial court clerk do not

_____

[3]This statute became effective the day before the hearing from which this appeal was taken. In its appellate brief, Memphis Bonding's reference to section 40-11-132 is to the prior version of the statute, which provided

At any time before the forfeiture of their undertaking, the bail bondsman or surety may surrender the defendant in their exoneration, or the defendant may personally surrender to the officer. Surrender by a bail bondsman or surety shall be for good cause, including, but not limited to, the following:

(1)     The defendant has violated the contractual provisions between defendant and bondsman; or

(2)     The bondsman or surety has good cause to believe that the defendant will not appear as ordered by the court having jurisdiction.

Tenn. Code Ann. § 40-11-132 (1997) (amended 2001).

include, insofar as we can tell, any order of final forfeiture or other entry of monetary judgment against Memphis Bonding.[4] The orders filed with the record merely deny exoneration, and we do not view this as the equivalent of final judgments.

A brief overview of the bonding statutes is illustrative of this point. Once a defendant has forfeited his bail bond by failing to appear or otherwise violating the conditions of release, "the court having jurisdiction shall enter an order declaring the bail to be forfeited." Tenn. Code Ann. § 40-11-139(a) (1997); *see also id.* § 40-11-201(a) (1997) ("a conditional judgment may be entered against the defendant and the defendant's sureties . . . ."). Following entry of a conditional judgment, "[a] scire facias shall issue as heretofore to notify the defendant and the defendant's sureties to show cause why such judgment shall not be made final." *Id.* § 40-11-202 (1997); *see also id.* § 40-11-139. A surety has 180 days from service of the *scire facias* to capture and surrender the defendant. *Id.* § 40-11-139(b); *see also id.* § 40-11-132. If the surety is able to surrender the defendant following the conditional judgment of forfeiture, it may be exonerated from liability, although exoneration is discretionary with the trial court. *Id.* § 40-11-203; *Black v. State*, 154 Tenn. 88, 290 S.W. 20 (1927). Before entering a final order of forfeiture, the court must provide the defendant and his surety with a hearing. *In re Paul's Bonding Co.*, 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001). Thereafter, the court may enter judgment against the defendant and his surety in the amount of bail and costs. Tenn. Code Ann. § 40-11-139(b)(2) (1997).

No final judgments of forfeiture have been included in the record. The six documents entitled "Order Denying Exoneration of Surety" address just that and do not order entry of final judgment on the forfeited bonds.[5] The absence of the final judgments from the record is fatal because this case is before us as a rightful appeal. *See* Tenn. R. App. P. 3. Rightful appeals lie from final judgments and in certain other enumerated circumstances, none of which exist here. *See id.* While it is certainly possible that the lower court has entered final judgments, we cannot adjudicate the case without having any such judgments before us. Thus, the proper course is for us to dismiss the appeal.

In so holding, we have pondered whether we might appropriately consider Memphis Bonding's filings with this court as an application for extraordinary appeal under Tennessee Rule of Appellate Procedure 10 or a petition for writ of *certiorari*. We are constrained to conclude, however, that due to the incomplete nature of the record before us, we cannot follow that course. The appellate record before us is so deficient that it is impossible to determine with certainty the

---

[4]In the case of the two unindicted cases that were the subject of Memphis Bonding's oral motion for exoneration, we are doubtful that there is any final judgment of forfeiture. It appears, in fact, from anecdotal information in the transcript of the hearing that the defendant had not forfeited these bonds.

[5]These orders deny exoneration of Memphis Bonding but grant exoneration of Frontier Insurance Company. We are mystified by the exoneration of the insurance company, as the arguments at the hearing as well as the court's order from the bench did not address the possibility of exoneration of the insurance company absent corresponding exoneration of the bonding company. However, no issue regarding this aspect of the order has been raised on appeal.

stage of the proceedings below. As stated above, we do not know whether final judgments have been entered. If they have, Rule 10 consideration would be inappropriate, as the rule contemplates interlocutory review. *See generally* Tenn. R. App. P. 10. We cannot determine the extent to which Rule 10 or *certiorari* review might otherwise be appropriate due to the absence of many documents from the record, including the conditional forfeitures,[6] *scire facias*, and final forfeitures.[7] Thus, dismissal is appropriate.

Accordingly, we dismiss Memphis Bonding Company's appeal.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[6]It is not even clear from the record that there had been forfeitures ordered on the two unindicted cases that were the subject of the oral motion for exoneration.

[7]We recognize that the documents entitled "Order Denying Exoneration of Surety" may be inartfully drawn conditional or final forfeiture orders. However, we are unable to make that determination on the deficient record before us.