IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

## STATE OF TENNESSEE v. CARLOS ALBERTO CABELLERO-GRAJEDA IN RE:  E & W BONDING COMPANY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1003     Cheryl Blackburn, Judge**

---

**No. M2004-02097-CCA-R3-CD - Filed August 11, 2005**

---

Appellant, E & W Bonding Company, appeals the trial court's denial of its motion for relief of its obligation under a bail bond of $100,000 in the case of criminal defendant Carlos Albert Cabellero-Grajeda.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3;Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT E. WEDEMEYER, JJ., joined.

Dale Quillen, Nashville, Tennessee, for the appellant, E & W Bonding Company.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I.  Background

On April 17, 2002, Carlos Alberto Cabellero-Grajeda was arrested on a charge of money laundering.  The affidavit supporting the warrant for the defendant's arrest described the basis for probable cause for the arrest as follows:

ON 4-1-02, OFFICER RIGSBY RECEIVED INFORMATION THAT MICHAEL DAVID GRIZZARD WAS GOING TO MAKE A DELIVERY OF WHAT WAS TO BE $130,000.00 DOLLARS TO JORGE HERRERA AND CARLOS GONZALEZ AT THE HOME DEPOT STORE PARKING LOT ON POWELL AVENUE.  AT APPROXIMATELY 8:42 PM JORGE HERRERA, CARLOS GONZALOS [sic], AND CARLOS CABELLERO, ALL IN DIFFERENT VEHICLES, WERE

PARKED IN THE HOME DEPOT LOT. AT 8:43 PM GRIZZARD ARRIVED AT THE LOT AND PARKED. GRIZZARD THEN PULLED UP NEXT TO HERRERA'S VEHICLE. GRIZZARD THEN PULLED UP NEXT TO CABALLERA'S VEHICLE. GRIZZARD THEN GAVE A MINIMUM OF $50,000.00 DOLLARS CURRENCY TO CABELLRO [sic]. A TOTAL COUNT OF THE CURRENCY HAS NOT BEEN MADE DUE TO IT BEING CHECKED FOR FINGERPRINTS. GRIZZARD THEN PULLED TO THE SOUTH END OF THE PARKING LOT WHERE CARLOS GONZALOS [sic] WAS SITTING IN ANOTHER VEHICLE. CABELLERRO ATTEMPTED TO FLEE IN HIS VEHICLE BUT WAS BLOCKED IN. ALL DEFENDANTS FACILITATED IN THE MONEY TRANSFER FOR PAYMENT OF OVER 250 POUNDS OF MARIJUANA.

On May 17, 2002, the Davidson County Criminal Court set bail in Cabellero's case in the amount of $100,000. At the bond hearing, Lorena Burciaga, Cabellero's girlfriend from El Paso, Texas, testified that she would pledge a piece of property she owned in El Paso as collateral for the bond. On May 28, 2002, Appellant agreed to secure Cabellero's appearance before the Court of Davidson County and "from day to day, then and there to answer to the State of Tennessee on a charge of . . . Money Laundering FELONY . . . and not to depart without leave of the Court first had and obtained." The same day Appellant entered into an Appearance Bond Agreement with Cabellero as principle and Lorena Burciaga as surety. Cabellero was then delivered by the Davidson County Sheriff's Office to the United States Immigration and Naturalization Service, which had a detainer on Cabellero, a citizen of Mexico. On June 11, 2002, the Davidson County Grand Jury indicted Cabellero for money laundering, a Class B felony, and conspiracy to deliver three hundred pounds of marijuana within one thousand feet of a school zone, a Class A felony. INS released him on bond on June 28, 2002.

Cabellero failed to appear for trial on May 5, 2003. Accordingly, the trial court issued a capias for Cabellero's arrest, entered a conditional judgment of forfeiture against the defendant and Appellant, and issued a writ of scire facias to notify Appellant of the conditional judgment. On September 25, 2003, Appellant filed a motion for relief, asking the court to discharge its obligation under the bail bond on the grounds that the State unilaterally enhanced the risk of its obligation. Appellant's petition asked the court to alternatively grant equitable relief and enter judgment against Lorena Burciaga for the amount of the bail bond, in addition to costs, according to the terms of the Appearance Bond Agreement. Appellant supplemented the motion for relief, adding two additional grounds for discharge of its obligation: (1) the defendant was never delivered to Appellant's custody because the State delivered the defendant to the custody of INS; and (2) Lorena Burciaga had no interest in the property which she pledged as collateral for the bond.

On November 7, 2003, the trial court held a hearing on Appellant's motion for relief. At the hearing, the court heard testimony from Erlene Weems, the owner of E & W Bonding Company. When Ms. Weems was questioned about what she did to investigate the risk of making an appearance bond for Mr. Cabellero, she stated that she based her decision on her belief that Lorena

Burciaga "really had the property that she was presenting to back up [the bond], you know, that I would at least have that if something went wrong." She stated that prior to making the bond, she did not make any effort to determine whether or not Mr. Cabellero was a citizen of the United States or whether or not INS had a "hold" on him, although she knew he did not speak any English. When questioned about the offenses for which Mr. Cabellero was indicted after he was released on bond, Ms. Weems testified as follows:

[PROSECUTOR]: Ms. Weems, did you notify the defendant's lawyers, Mr. Velarde or Mr. Quillen, that his case was up for arraignment when the case was finally indicted? Did you do that?

[MS. WEEMS]: Yes.

[PROSECUTOR]: And that indictment was available to you then; is that correct?

[MS. WEEMS]: Yes.

[PROSECUTOR]: And you saw the additional charge of the drug conspiracy on that indictment; is that correct?

[MS. WEEMS]: Yes.

[PROSECUTOR]: Okay. Now, what I want to find out is: What efforts did you take from the time you learned of the additional charge until the defendant's trial, when he failed to show on the day of his trial? What efforts did you make to surrender the defendant because of the increased risk?

[MS. WEEMS]: Like I told the judge, I sent the bounty hunters as soon as I --

[PROSECUTOR]: No, no, no. That was after the forfeit. I'm talking about after he was arraigned and you found out that he had this new drug conspiracy charge on him from the grand jury, did you ever ask the judge to be relieved from the bond?

[MS. WEEMS]: No.

Ms. Weems testified that, although she did not know where Mr. Cabellero was, she had sent bounty hunters to El Paso in order to attempt to locate him. However, she had not contacted the bonding company that posted bond for Mr. Cabellero when he was released from INS on bond.

The court issued a written order on July 6, 2004, memorializing its oral ruling that it was "compelled to deny the motion for lack of jurisdiction as their claims concern civil issues relating

to contract law, not criminal law." At Appellant's request, the trial court issued an additional written order on August 3, 2004, addressing Appellant's argument that Appellant was exposed to enhanced risk when the State indicted Defendant for a serious charge. The court held that "whether a defendant is indicted for a greater offense [than] what he was originally arrested for is irrelevant as to a bond company's obligations," and ruled that, pursuant to Tennessee Code Annotated section 40-11-201, (which sets forth the means by which a bail bondsman may surrender the defendant in their exoneration), Appellant cannot be exonerated from its obligations until it brings Cabellero before the court. The next day, Appellant filed a motion to stay execution pending the final outcome on appeal. The trial court granted this motion.

## II. Analysis

First, Appellant contends that the trial court erred in denying its request for equitable relief against Lorena Burciaga on the grounds that it lacked jurisdiction. Appellant entered into an Appearance Bond Agreement whereby Burciaga purportedly agreed to "an obligation to [Appellant] to pay all expenses incurred by [Appellant] resulting from a forfeiture of [Cabellero]'s court appearance bond," including indemnifying Appellant "fully for all losses incurred by [Appellant] as a result of [Cabellero]'s default." Burciaga pledged a piece of property in El Paso as collateral for the bond, although it was property that she had transferred to another party years earlier. Pursuant to this contract, Appellant asked the trial court for judgment against Burciaga in the amount of $100,000 in addition to costs. Appellant supports its argument that the trial court did have jurisdiction over the case by citing Tennessee Code Annotated section 39-11-715, entitled "Equity powers of court." The statute provides:

> Any criminal court or general sessions court may conduct such hearings and enter such orders, injunctions, restraining orders, prohibitions, or issue any extraordinary process **for the purpose of ensuring that any defendant does not use any proceeds directly or indirectly derived from a criminal offense for the purpose of securing an appearance bond or to pay the premium for the same**. Any court may require the defendant or bonding agent to prove in open court the source of such bond or premium before accepting the same, and the burden of proof shall be upon the party seeking the approval or acceptance of the bond.

Tenn. Code Ann. § 39-11-715 (emphasis added). Appellant asserts that this statute grants a criminal court broad powers to prevent fraud in "source" hearings. However, the language of the statute indicates that it grants criminal courts "equity powers" for a very limited purpose: to determine the source of the funds a criminal defendant uses to post bond or to pay the premium required by a bonding company so as to ensure that those funds do not derive from a criminal defendant's illegal activity. The statute does not grant a criminal court jurisdiction, as Appellant suggests, over a matter arising solely out of a contract between two private parties. *See State v. Wood*, 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002) (holding that the Davidson County Criminal Court lacked jurisdiction to hear an appeal of contempt charges from a general sessions court because such proceedings are not "fully

criminal"). We agree with the trial court that the matter relates to contract law, not criminal law, and therefore the court lacked jurisdiction to consider Appellant's claims for relief against Burciaga.

Next, Appellant argues that the trial court abused its discretion when denying its motion for relief from its bond liability on the grounds that the State unilaterally increased the risk by indicting Cabellero for an additional and more serious offense than what was originally charged. A bail bond is "a contract between the government on one side and the criminal defendant and his surety on the other, whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of bail set by the court." *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 202 (Ct. Crim. App. 2002). Typically, prior to or simultaneously with the execution of a bail bond,

> [a professional] bondsman and the defendant form a contract in which the bail bondsman agrees, for a fee, to act as the defendant's surety. In addition to paying the fee, the defendant agrees to appear in court for all scheduled appearances. The bondsman only makes a profit when he is able to collect fees from the defendant and avoid paying the amount of the bond to the court. . . . His business depends on the appearance in court of his clients.
>
> There is, of course, risk that the defendant will sign the contract with the bondsman, secure release and leave the jurisdiction or refuse to appear in court. To protect his investment, the bondsman must be thorough not only in assessing the risk of flight before writing the bond, but in keeping tabs on the defendant after the bond is written. The profit motive is presumed to insure diligent attention to his custodial obligation.

*Id.* (citing Holly J. Joiner, Note, *Private Police: Defending the Power of Professional Bail Bondsman*, 32 Ind. L. Rev. 1413, 1422 (1999).

Because the professional bail bonding business is closely related to our state's criminal justice system, it is strictly regulated by statute. The forfeiture of bail bonds is governed by Tennessee Code Annotated sections 40-11-201 through 40-11-215. Section 40-11-201(a) provides that a trial court may enter a conditional judgment of forfeiture against a defendant and his sureties if the defendant fails to appear in court. Upon entering this conditional judgment of forfeiture, the trial court must issue a writ of scire facias requiring the defendant and his sureties to "show cause why such judgment shall not be made final." Tenn. Code Ann. § 40-11-202. Before entry of a final judgment of forfeiture, the trial court must afford the defendant and his sureties a hearing prior to final forfeiture. *In re Paul's Bonding Co.*, 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001) (citing *Indemnity Ins. Co. of North America v. Blackwell*, 653 S.W.2d 262, 264 (Tenn. Ct. App. 1983)). At this hearing, a surety or bonding company may petition the court for relief from forfeiture. However, the surety bears the burden of proving that its petition should be granted. *In re Paul's Bonding Co.*, 62 S.W.3d at 193. The trial court may then enter judgment against the defendant and his sureties for the amount of the bail bond and the costs of the proceedings. Tenn. Code Ann. § 40-11-139(b).

A surety may be exonerated from forfeiture by its surrender of the defendant to the court at any time before payment of the judgment of forfeiture. § 40-11-203(a). However, once a forfeiture has been paid, the surety must seek relief pursuant to Tennessee Code Annotated section 40-11-204(a), which provides that a court

> may receive, hear, and determine the petition of any person who claims relief is merited on any recognizances forfeited, and so lessen or absolutely remit the same, less a clerk's commission . . . and do all and everything therein as they shall deem just and right, and consistent with the welfare of the state, as well as the person praying such relief. This power shall extend to the relief of those against whom final judgment has been entered whether or not the judgment has been paid, as well as to the relief of those against whom proceedings are in progress.

A trial court's discretion under this section is "broad and comprehensive, empowering trial courts to make determinations 'in accordance with [their] conception of justice and right.'" *State v. Shredeh*, 909 S.W.2d 833, 835 (quoting *Black v. State*, 290 S.W. 20, 21 (Tenn. 1927)). Accordingly, this Court reviews a trial court's determinations under an abuse-of-discretion standard. *In re Paul's Bonding Company*, 62 S.W.3d at 194. Therefore, we will grant the trial court the benefit of its decision unless the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *see also State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). Although the trial court's discretion is "broad and comprehensive," its authority to relieve sureties from liability may only be exercised in extreme cases, such as the death of the defendant or some other condition making it impossible for sureties to surrender the defendant; the "good faith effort made by the sureties or the amounts of their expenses are not excuses." *In re Paul's Bonding Co.*, 62 S.W.3d at 194; *Shredeh*, 909 S.W.2d at 836; *State v. Frankgos*, 85 S.W. 79, 81 (Tenn. 1904). "To relieve sureties upon [lesser] grounds . . . would encourage defendants to forfeit their bail, and bring about a very lax administration of the criminal laws of the State." *Frankgos*, 85 S.W. at 81.

Applying this legal standard, we agree with the trial court that Appellant is not entitled to relief. Appellant contends that the State unilaterally increased the risk that Cabellero would flee by indicting him for an additional and more serious charge than the offense for which he was initially arrested for. To support its argument, Appellant relies on a Florida Court of Appeals case, *Midland Insurance Company v. State of Florida*, 354 So. 2d 961 (Fla. Dist. Ct. App. 1978). In that case, the Florida court reversed a trial court's denial of a surety's motion to set aside the final judgment of bond forfeiture where the surety posted a $5,000 bail bond for a defendant arrested for second degree murder who was instead indicted for first degree murder. We do not find this case, based on Florida law, persuasive. As noted above, in Tennessee, the forfeiture of bail bonds and the circumstances entitling a surety to relief from forfeiture are strictly regulated by our state statutes. If, after Appellant posted bond for Cabellero, it became concerned that the defendant would not appear in court to answer charges, Appellant's proper remedy would have been to surrender the defendant and be exonerated pursuant to Tennessee Code Annotated section 40-11-132. Ms. Weems

testified at the hearing on the motion for relief that she knew about Cabellero's additional charge, but made no attempt to surrender him until after he had failed to appear in court.

Appellant has not established that this is an "extreme case" whereby it would be "impossible for [Appellant] to surrender the defendant." *See In re Paul's Bonding Co.*, 62 S.W.3d at 194 Appellant asserts that, despite its efforts, it has been unable to ascertain Cabellero's whereabouts. However, the risk that a criminal defendant will flee is exactly the type of risk assumed by a professional bail bondsman when executing a bail bond and agreeing to secure a criminal defendant's appearance in court. The trial court did not abuse its discretion when denying Appellant's motion for relief from forfeiture.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE