IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2009 Session

## STATE OF TENNESSEE v. ANTONI DANTA HIX
## IN RE: CARLOS BONDING, LLC

Appeal from the Circuit Court for Bedford County
No. 16329    Robert Crigler, Judge

No. M2008-01056-CCA-R3-CD - Filed March 31, 2009

The Appellant, Carlos Bonding, LLC, appeals the Bedford County Circuit Court's order granting partial exoneration from the final forfeiture of a $20,000 bond and ordering the company to forfeit $6,000 of the bond. On appeal, Carlos Bonding argues that the trial court, by referencing the concept of treble damages, abused its discretion in its method of calculating the amount to be forfeited. Because the trial court must be afforded broad discretion in a bail forfeiture proceeding, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Robert Marlow, Shelbyville, for the appellant, Carlos Bonding, LLC.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

In the Bedford County Circuit Court, Carlos Bonding, LLC, was surety on a bail bond for the Defendant, Antoni Danta Hix, in the amount of $20,000. The Defendant, who was charged with possession of a schedule II controlled substance for resale, failed to appear for a scheduled court date on August 20, 2007. A conditional forfeiture was taken against the Defendant on that date, and a capias was issued for his arrest. A *scire facias* was served on Carlos Bonding on August 22, 2007, requiring Carlos Bonding and the Defendant to appear in court on February 21, 2008, to show cause for not making that judgment final. On February 21, neither Carlos Bonding nor the Defendant

appeared as directed, and the trial court declared a final forfeiture of the bond.[1] On March 9, 2008, Carlos Bonding apprehended the Defendant, who was taken into the custody of the Rutherford County Sheriff's Office. Carlos Bonding then petitioned the trial court for relief from the final forfeiture.

A hearing was held on April 2, 2008. According to the testimony of Detective Jason Mathis of the Rutherford County Sheriff's Department, Narcotics Division, Juan Carlos Alvarado of Carlos Bonding contacted him on February 29, 2008, concerning the Defendant. Mr. Alvarado advised Det. Mathis that he was looking for the Defendant, an individual he had posted bond for; that he believed the Defendant to be a fairly sizeable drug dealer; that he had a location where the Defendant was staying; and that he had reason to believe the Defendant had a large amount of narcotics, money, and firearms at this residence. Detective Mathis met with Mr. Alvarado to discuss the apprehension of the Defendant.

On March 9, 2008, Det. Mathis received word that Mr. Alvarado had made entry into the Defendant's residence and that, after taking the Defendant into custody, Mr. Alvarado had observed large amounts of narcotics, money, and firearms in the residence. Detective Mathis proceeded to the scene, where the Defendant and his girlfriend were in handcuffs. Following his arrival, Det. Mathis also saw drugs, guns, and money inside the home. Thereafter, new charges were filed against the Defendant in Rutherford County. The Defendant was transferred to the Rutherford County Jail for booking procedures. Detective Mathis testified that Mr. Alvarado would not have been permitted to remove the Defendant from Rutherford County to Bedford County to surrender him.

On cross-examination, the State inquired of Det. Mathis if he had ever instructed Mr. Alvarado not to apprehend the Defendant based upon an ongoing investigation in Rutherford County. Detective Mathis replied in the negative.

Mr. Juan Carlos Alvarado testified that he, along with his wife, were the principal owners of Carlos Bonding. Mr. Alvarado confirmed that he made bond for the Defendant and that the Defendant subsequently failed to appear in court. Mr. Alvarado had previously learned that the Defendant had been involved in a high-speed chase with officers of the local Drug Task Force and had abandoned his burning vehicle in a corn field with his wife and children inside. After Mr. Alvarado received this information, he did not believe that the Defendant would appear in court.

When asked what steps he took to locate the Defendant after he failed to appear, Mr. Alvarado stated that he attempted to contact the Defendant by telephone to no avail and that he contacted the "co-signer or the co-principle" on the bond: the Defendant's mother, Carol Denise Hix. According to Mr. Alvarado, Ms. Hix had been an employee of Tyson Foods for over twelve years and had pledged her home as collateral against the $20,000 bond.

---

[1] The trial court noted that, on the date of the final forfeiture, the State vigorously argued for suspension of Carlos Bonding, but the trial court refused to do so.

Mr. Alavardo was aware that the Defendant was in Rutherford County on August 20, the day he failed to appear in court, having received this information from Detective Tim Lane, Director of the local Drug Task Force in Murfreesboro. According to Mr. Alvarado, Detective Lane "suggested to involve a new agency in order to build a case or get him with drugs or guns or money or whatever he had the day of the arrest."

Although he knew the Defendant's whereabouts "for a long period of time[,]" the Defendant was difficult to apprehend because he moved around from house to house and owned several different vehicles. Mr. Alvarado stated that he had tried to locate the Defendant throughout the first six months after he failed to appear, claiming that "[w]e never have neglected a case" and that his "track record" in the jurisdiction since 1991 reflected this.

Mr. Alvarado acknowledged that a final forfeiture was entered in February 2008. While he was not idle before February 2008, he did "kick [it] into overdrive" once he received notice of the final forfeiture. According to Mr. Alvarado, the Defendant was originally located on December 24 in a Rutherford County apartment complex, Battleground Apartments.[2] While unable to apprehend the Defendant at this location, Mr. Alvarado conducted surveillance of the apartment complex on a weekly basis throughout January.

During his surveillance of the Defendant, it appeared to Mr. Alvarado that the Defendant was continuing to deal in drugs. While he did not actually see the exchange of drugs, Mr. Alvarado observed a "high traffic" area with people always coming and going from the Defendant's apartment. When asked why he did not take the Defendant into custody at this time, Mr. Alvarado responded that the Defendant "would have soldiers, other people around him" making the situation "semi-lethal." Mr. Alvarado gave the information he gathered against the Defendant to Det. Mathis and Det. Tony Hall "in order for them to build a better case against [the Defendant]." On cross-examination, Mr. Alvarado clarified that he could not definitely say that it was the Defendant he saw participating in a drug deal in the parking lot.

Based upon new information from an informant, Mr. Alvarado began conducting surveillance on a new location, Chelsey Place Apartments, Apartment K-1. This surveillance lasted about a week. At approximately 4:30 a.m. on March 9, 2008, Mr. Alvarado arrived at the location. He observed the Defendant and his girlfriend leave the residence. Wanting to make sure no one else was inside the apartment, he did not try to stop the couple because he knew they would return shortly.

Also while the couple was away from the apartment, Mr. Alvarado contacted Det. Tony Hall of the Rutherford County Sheriff's office and informed Det. Hall that he had seen the Defendant. According to Mr. Alvarado, Det. Hall instructed him that he would have officers on standby and that, if Mr. Alvarado observed illegal activities in the apartment, the officers would come if called for assistance.

---

[2] In Carlos Bonding's motion to set aside the final forfeiture, it is stated that the Defendant was located on October 12, 2007, at Battle Creek Apartment No. 25.

-3-

Around 11:00 a.m., Mr. Alvarado, with the assistance of another bail bondsman, gained entry into the apartment. Mr. Alvarado subdued the Defendant and placed him in handcuffs. The Defendant's girlfriend was also subdued and handcuffed. Mr. Alvarado contacted Det. Hall and informed him that he had discovered drugs, weapons, and a large sum of money inside the apartment. Mr. Alvarado detained the Defendant until officers arrived on the scene and took over the investigation. Rutherford County officers arrested the Defendant.

The trial court then asked Mr. Alvarado to clarify some statements. Mr. Alvarado confirmed that Det. Lane told him that the Defendant was staying in the Chelsey Place Apartments in August 2007. When asked why he could not locate the Defendant at that time, Mr. Alvarado responded that there were almost 400 units in the complex and that he did not have a specific apartment number. Mr. Alvarado confirmed that the Defendant was ultimately found in this apartment complex.

Mr. Alvarado acknowledged that he knew that the Defendant failed to appear in court. When Mr. Alvarado was asked why he did not appear in court on February 21, 2008, as ordered, Mr. Alvarado replied that he "thought the matter was taken care of." Mr. Alvarado said that he believed the matter was taken care of because he had a dry erase board in his office with the names of defendants who failed to appear and that the Defendant must have been "overlooked." He then stated that he thought Det. Cruise was working on it due to the high-speed car chase.

Mr. Alvarado also admitted that he had filed motions for extensions of time on bond forfeitures before and that he had never been denied a request for an extension of time. Mr. Alvarado maintained that Det. Cruise wanted him to wait "until he got it set up himself with the Rutherford County Task Force."

On recross-examination, Mr. Alvarado testified that Det. Cruise told him not to pick up the Defendant.

The State then called Det. Cruise. He testified that he had a conversation with Mr. Alvarado sometime during the previous year about the Defendant and that Mr. Alvarado had an informant who could tell Det. Cruise of the Defendant's whereabouts. According to Det. Cruise, Mr. Alvarado believed the Defendant to be in Chelsey Place Apartments in Murfreesboro, but he did not know what specific apartment. Detective Cruise instructed Mr. Alvarado to have his informant contact him. The informant never contacted him.

Detective Cruise again spoke with Mr. Alvarado sometime after February 21, 2008. Mr. Alvarado claimed that the informant had unsuccessfully tried to contact Det. Cruise. Detective Cruise found this unlikely as he was "not very hard to get in touch with." Finally, Det. Cruise affirmed that he never instructed Mr. Alvarado to forego picking up the Defendant so they could build a case against him in Rutherford County.

Following the conclusion of proof, the trial court granted partial exoneration from the final forfeiture amount of $20,000. The court noted that Mr. Alvarado testified he did not keep up with

the Defendant and, therefore, should not have any "complaints" with the court's ruling. The trial court found that the administration of justice required Carlos Bonding to pay some portion of the final forfeiture because otherwise "[t]here would be certainly the temptation on occasion for a bondsman to be in cahoots with the defendant and just let them stay out and surrender them at the last minute." The trial court also stated that it was "skeptical" about Mr. Alvarado's reasons for not being able to capture the Defendant in the Chelsey Place Apartments prior to the final forfeiture. Mr. Alvarado had received information that the Defendant was in this complex in August 2007. The court found, "The trouble is you didn't start before the final forfeiture was taken." However, the court went on to state that, on the other hand, Carlos Bonding "did catch him pretty quick after the final. . . . It kind of shows that you might have been able to catch him a little bit earlier than that, too." After making these findings, the trial court required Carlos Bonding to pay $6,000:

> Given the speed with which you caught him, I think maybe the right thing to do is—there is a 10 percent premium.[3] Just the concept of treble damages comes in to it. I think for lack of a better way to figure it, I think the judgment should be for $6000 given that you got him that quickly.

Carlos Bonding timely appealed.

**Analysis**

On appeal, Carlos Bonding argues that the trial court abused its discretion in determining the amount of the bond to be paid. Specifically, Carlos Bonding contends that "[t]o impose a penalty in the amount of $6,000, based upon the concept of treble damages and the maximum bond premium, is an abuse of discretion."

The forfeiture of bail bonds is governed by Tennessee Code Annotated sections 40-11-201 through 40-11-215. Specifically, Tennessee Code Annotated section 40-11-201(a) provides that a trial court may enter a conditional judgment of forfeiture against a defendant and his sureties if the defendant fails to appear in court in accordance with a bail bond agreement. Upon entry of a conditional judgment, the trial court must issue a writ of *scire facias* requiring the defendant and his sureties to show cause why the judgment should not become final. Tenn. Code Ann. § 40-11-202. Before entry of a final judgment of forfeiture, the trial court must afford the defendant and his sureties a hearing. In re Paul's Bonding Co., Inc., 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001) (citing Indem. Ins. Co. of N. Am. v. Blackwell, 653 S.W.2d 262, 264 (Tenn. Ct. App. 1983)). Thereafter, the trial court may enter judgment against the defendant and his sureties for the amount of the bail bond and the costs of the proceedings. Tenn. Code Ann. § 40-11-139(b).

---

[3] Tennessee Code Annotated section 40-11-316(a), in pertinent part, provides for premiums as follows:

> Professional bondsmen and agents of insurance companies making appearance bonds of a criminal nature shall not assess more than ten percent (10%) of the amount of the face value of the bond for premium fee and related charge or charges, and the premium fee and related charge or charges shall not be assessed but one (1) time during the first twelve (12) months of the pendency of the charge or charges and indictment or indictments in either the trial court or any lower court.

A surety may be exonerated from forfeiture by its surrender of the defendant to the court at any time before payment of the judgment of forfeiture pursuant to Tennessee Code Annotated section 40-11-203(a). Trial courts have the discretion to relieve bail bondsmen or other sureties from the liability of bail and are authorized to hold hearings to determine whether the forfeiture should be excused, partially or absolutely. Tennessee Code Annotated section 40-11-203 provides as follows:

> (a) After the liability of the bail bondsman or surety has become fixed by forfeiture, and before payment, the bail bondsman or surety may be exonerated from the liability by the surrender of the defendant and the payment of all costs; but may be exonerated from costs also if, in the opinion of the court, the bail bondsman or surety has been in no fault.
>
> (b) It is left to the sound discretion of the court whether the bail bondsman or surety shall be relieved from the liability of bail to any and to what extent.

Tenn. Code Ann. § 40-11-203. The discretion conferred is broad and comprehensive, empowering the court to decide each case according to its conception of justice. Black v. State, 290 S.W. 20, 21 (Tenn. 1927).

The trial court found that Carlos Bonding was entitled to some exoneration for the efforts it made in the return of the Defendant, but that full exoneration was inappropriate because Carlos Bonding "might have been able to catch him a little bit earlier" and failed to appear to request an extension of time. The record supports these findings.

The Defendant failed to appear for a scheduled court date on August 20, 2007, and absconded. Conditional forfeiture of the bond was taken on that same date and, thereafter, a *scire facias* was issued. Carlos Bonding received notice of the conditional forfeiture and *scire facias* on August 22, 2007. On February 21, 2008, Carlos Bonding and the Defendant failed to appear, and the trial court entered a final order of forfeiture. Carlos Bonding was not present and did not request an extension of time even though Carlos Bonding was familiar with the process. Through the efforts of Carlos Bonding the Defendant was arrested on March 9, 2008, only seventeen days after the final forfeiture was taken. In August 2007, Det. Lane had notified Mr. Alvarado that the Defendant was residing in the Chelsey Place Apartments in Murfreesboro. However, Mr. Alvarado admitted that he thought the matter was taken care of and failed to keep up with the Defendant. The Defendant was eventually found by Mr. Alvarado in this apartment complex.

The trial court expressed disbelief when Mr. Alvarado explained his reasons for not being able to locate the Defendant sooner. The court also noted that, after the final forfeiture was taken, Carlos Bonding did find the Defendant "pretty quick[.]" The trial court noted its discretionary authority under the statute: "It is left to the sound discretion of the court whether the bail bondsman or surety shall be relieved from the liability of bail to any and to what extent." Tenn. Code Ann. § 40-11-203. In referencing the concept of treble damages, the trial court stated that it did so "for lack of a better way to figure it." As previously noted, the discretion afforded trial courts has been

described as broad and comprehensive, with the empowerment to make determinations "in accordance with [its] conception of justice and right." <u>Black</u>, 290 S.W. at 21. After a careful review of the record, we cannot conclude that the trial court abused its discretion in determining that six thousand dollars of the bond should be forfeited.

### Conclusion

We conclude that the trial court did not abuse its discretion. The judgment of the Bedford County Circuit Court is affirmed.

_____
DAVID H. WELLES, JUDGE