IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 1, 2015

### IN RE:  AMERICAN BONDING COMPANY

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-CR106001     Michael W. Binkley, Judge**

_____

### No. M2015-00315-CCA-R3-CD – Filed June 2, 2016

_____

The appellant, American Bonding Company, appeals the Williamson County Circuit Court's order granting partial exoneration from the final forfeiture of a $200,000 bond and ordering the company to forfeit $75,000 of the bond.  On appeal, the appellant argues that it is entitled to full exoneration of the forfeited bond because law enforcement requested that the company not attempt to apprehend the subject of the bond.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Geoffrey Coston (on appeal and at trial) and David King (at trial), Franklin, Tennessee, for the appellant, American Bonding Company.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Kim Helper, District Attorney General; and Mary K. White, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

In October 2011, the Williamson County Grand Jury indicted Wendell Lee Washam for two counts of rape of a child, a Class A felony; one count of solicitation to commit rape of a child, a Class B felony; one count of aggravated sexual battery, a Class B felony; one count of solicitation of sexual exploitation of a minor, a Class B felony;

and one count of solicitation of sexual exploitation of a minor by electronic means, a Class C felony. The appellant and Amir Karshenas were sureties on a bail bond for Washam in the amount of $200,000. Washam failed to appear for a scheduled court date on December 3, 2012. A conditional forfeiture was entered against Washam on that date, and a capias was issued for his arrest. On May 24, 2013, the circuit court clerk notified American Bonding Company that a final forfeiture hearing had been scheduled for June 3, 2013. The hearing was subsequently reset for June 17, 2013.

At the June 17 hearing, David King, one of the attorneys representing American Bonding Company, advised the trial court that the company had not pursued capture of Washam based on information received from Detective Tomeka Sanders of the Williamson County Sheriff's Office. King then called the officer to the stand. Detective Sanders testified that after Washam failed to "show up" for a court appearance, she and Joe Burns, who worked for both the sheriff's office and the U.S. Marshals, tried to find him. Detective Sanders said that she "didn't have any concerns about [American Bonding Company] locating him" but that she had concerns "about them going to the victim's house to do so." The victim was the ten-year-old daughter of Washam, who was eighty-one-years old. Detective Sanders denied having concerns about American Bonding Company interfering with her investigation or locating Washam and stated that law enforcement and the bonding company "were supposed to work as a team."

At that point, King advised the trial court that he needed to withdraw from the case because he had become a witness and requested a continuance. The trial court granted counsel's motion to withdraw but denied his motion to continue the hearing. King left the courtroom, and co-counsel continued questioning Detective Sanders. Detective Sanders testified that she never talked with Mr. Karshenas directly about Washam. However, she spoke with someone named "Dale." Dale claimed to have spoken with Washam's girlfriend, Pat Snow. Detective Sanders said she told Dale "to be really careful about what you tell [Snow]" because Detective Sanders thought Snow was helping Washam hide. Subsequently, Detective Sanders spoke with David King and told him that she thought Washam was in Missouri and that she hoped to apprehend Washam soon. At some point, the victim contacted Detective Sanders and told her that bounty hunters had come to the victim's home. The victim was upset, so Detective Sanders telephoned King and asked why American Bonding Company would send bounty hunters to the victim's house. Detective Sanders said that she did not remember the exact wording she used with King but that she "asked them not to do that."

On cross-examination, co-counsel asked if Detective Sanders ever told King that American Bonding Company was not to pursue Washam. Detective Sanders answered, "No, I don't feel like I did." Detective Sanders learned Washam was in Australia and

may have relayed that information to King.  On redirect examination, Detective Sanders testified that she never told King not to look for Washam.

Amir Karshenas was called to the stand and waived his attorney-client privilege regarding King's communications with Detective Sanders.  David King was then called and testified that he spoke with Detective Sanders at least twice.  Detective Sanders did not speak directly with Mr. Karshenas but communicated with him "through" King.  Detective Sanders knew Mr. Karshenas had hired bounty hunters to assist with the case and told King that the police "thought they were close" to capturing Washam.  King said,

> I understood her to say that she wanted Mr. Karshenas to -- and I don't know if she used this term, but she wanted him to back off the investigation or back off attempting to get him because it would interfere, and we had already talked about him possibly being in Australia . . . . [T]he gist of that conversation from my standpoint which I relayed to my client was you need to stand down on your efforts until -- give law enforcement a chance to get him because they think they're close. . . . I suggested to him, you know, he was going to have to spend a lot of money and if they were asking him to not do that and they were going to spend the money and do it, that law enforcement was going to do it, that that was a plus for him so I basically advised him to do that.

King said he thought his conversation with Detective Sanders occurred in February 2013.

On cross-examination, King testified that he did not recall Detective Sanders telling him that bounty hunters had been to the victim's home.  He said that Mr. Karshenas followed his advice, which was based on his conversation with Detective Sanders.

On June 24, 2013, the trial court filed a "FINAL JUDGMENT" in which it declared a final forfeiture of the bond, stating as follows:

> This cause came to be heard on the 17th day of June, 2013 . . . pursuant to notice setting a final forfeit hearing and the entire record.  From all of which the Court is of the opinion and so finds as follows:
>
> 1.  The defendant forfeited bail by failing to appear in court as reflected in the

conditional judgment previously entered in this case.

2.      The Clerk of the Court has complied with the requirements of T.C.A. 40-11-139 pertaining to notice to the Defendant and service of process on the Defendant's surety.

3.      More than 180 days have passed since the surety was sent by certified mail a copy of the Judgment Nisi. No answer or other response has been filed.

4.      The Defendant has not been returned to the criminal justice system nor has the Defendant satisfied the Court that his/her appearance and surrender is impossible and without the Defendant's fault.

Payment of the bond was due on June 28, 2013.

On June 26, 2013, American Bonding Company filed a motion to set aside final forfeiture. According to the motion, the company "was told that Franklin Police and the TBI would capture Wendall Washam and not to pursue him. Mr. Washam was believed to be hiding in Australia." The motion also alleged that Dale Karshenas purchased an airline ticket for Washam on June 23, 2013, and that Washam landed in Los Angeles and was apprehended by authorities.[1]

The trial court held a hearing on the appellant's motion to set aside final forfeiture on August 17, 2013. At the hearing, Dale Karshenas, an agent for American Bonding Company and Amir Karshenas's wife, testified that she spoke with a female police officer about apprehending Washam. The officer told her to "relax" and that the police "were working on it and they would be getting him under custody." Based on Mrs. Karshenas's conversation with the officer, she "sort of backed off." American Bonding Company's attorney also instructed her not to proceed with capturing Washam. Mrs. Karshenas stated, "They sort of said just to let the police officers and everybody take care of it." However, after the final forfeiture, Mrs. Karshenas "got in touch with all the people that were involved," including Pat Snow. Snow lived in Kansas and thought

---

[1] American Bonding Company attached a receipt to the motion, showing the purchase of an airline ticket for Washam, departing Melbourne, Australia, and landing in Los Angeles on June 23, 2013.

Washam was in Australia. Mrs. Karshenas paid Snow $600 to $800 for her cooperation. Snow communicated with Washam and convinced him to return to the United States, so Mrs. Karshenas bought Washam an airline ticket. In addition to those expenses, American Bonding Company spent money at hotels and gas stations while it was trying to find Washam.

On cross-examination, Mrs. Karshenas denied that the police officer told her to "back off" from going to the victim's home and stated that "[w]e were told to back off from all of it." She said that she did not go to the victim's house and that she did know of anyone from the bonding company who did so. She acknowledged that she had the telephone numbers of Snow and Washam's nephew and said that she spoke with Snow "on and off at different times." She stated that after the conditional forfeiture on December 3, 2012, "[w]e tried to talk to the officers and everybody kept saying that they were working on it. So again, everybody kept saying to back off and let them handle it. . . . We still backed off." After the final forfeiture, though, someone from American Bonding Company went to Kansas, spoke with Snow in person, and got her to cooperate. On redirect examination, Mrs. Karshenas testified that after the conditional forfeiture, officers "[kept] saying for us just to let them work it through. And that's what we did."

Amir Karshenas testified that he spoke with Deputy Sheriff Cleve Johnson numerous times at the courthouse and asked about Washam's status. Police told Mr. Karshenas that they knew Washam was in Australia and that "they've been working on [it] to bring him back." Mr. Karshenas checked on Washam's status two to four times per month and was told, "Amir, don't worry about it, we know where he is, we're going to get him." After the final forfeiture, Mr. Karshenas drove to Kansas and met with Pat Snow. Snow talked with Washam via the internet and convinced him to return. Mr. Karshenas's wife bought an airline ticket for Washam, and Washam came back to the United States.

On cross-examination, Mr. Karshenas testified that his attorney, David King, also advised him not to pursue Washam. He denied that he did not pursue Washam in order to save money and have the police do the work. Mr. Karshenas said that he hired bounty hunters but that law enforcement stopped him from sending them to apprehend Washam. He acknowledged that law enforcement did not have authority over the bonding company. Mr. Karshenas said he did not seek Snow's help earlier because law enforcement "told us not to pursue it, do not go after him, we are handling it." After the final forfeiture, Mr. Karshenas told an agent with the Tennessee Bureau of Investigation that "it's my turn" and that he had no choice but to find Washam. Upon being questioned by the trial court, Mr. Karshenas testified that he did not have any contact with Washam between the time of the conditional forfeiture and the final forfeiture. At the conclusion

of Mr. Karshenas's testimony, the trial court stated that it would issue a memorandum opinion regarding American Bonding Company's motion to set aside final forfeiture.

On May 30, 2014, Washam pled guilty to two counts of aggravated sexual battery as a lesser-included offense of rape of a child and received an effective sixteen-year sentence to be served at 100%. The remaining charges were dismissed. On January 20, 2015, the trial court filed an order granting partial exoneration from the final forfeiture amount of $200,000. The court noted that American Bonding Company "had a hand in securing apprehension of Washam through the purchase of an airline ticket but did not pay the costs." The court also noted that Washam was apprehended soon after the final forfeiture. However, the court found that American Bonding Company was at fault for knowing that Washam was in Australia but not apprehending him until after the final forfeiture and for failing to request an extension of time to apprehend him. The court ordered that the company pay $75,000.

## II. Analysis

On appeal, American Bonding Company contends that it should be exonerated from the $75,000 forfeiture because it complied with law enforcement's request to refrain from attempting to recover Washam and is being punished for doing so. It also contends that the $75,000 forfeiture is a greater amount and percentage of the bond than in other cases in which the defendant has been returned to custody and that reversing the trial court's decision will encourage other bondsmen, in similar circumstances, to cooperate with the recovery of defendants who abscond. The State argues that the trial court did not abuse its discretion. We agree with the State.

The forfeiture of bail bonds is governed by Tennessee Code Annotated sections 40-11-201 through 40-11-215. Specifically, Tennessee Code Annotated section 40-11-201(a) provides that a trial court may enter a conditional judgment of forfeiture against a defendant and his sureties if the defendant fails to appear in court in accordance with a bail bond agreement. Upon entry of a conditional judgment, the trial court must issue a writ of scire facias requiring that the defendant and his sureties show cause why the judgment should not become final. Tenn. Code Ann. § 40-11-202. Before entry of a final judgment of forfeiture, the trial court must afford the defendant and his sureties a hearing. In re: Paul's Bonding Co., Inc., 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001) (citing Indemnity Ins. Co. of North America v. Blackwell, 653 S.W.2d 262, 264 (Tenn. Ct. App. 1983)). Thereafter, the trial court may enter judgment against the defendant and his sureties for the amount of the bail bond and the costs of the proceedings. Tenn. Code Ann. § 40-11-139(b).

A surety may be exonerated from forfeiture by its surrender of the defendant to the court at any time before payment of the judgment of forfeiture pursuant to Tennessee Code Annotated section 40-11-203(a). The decision of whether to relieve the surety of the liability of the bail and the extent of relief is left to the trial court's discretion. Tenn. Code Ann. § 40-11-203(b). "The discretion conferred is broad and comprehensive, empowering the court to decide each case according to its conception of justice." State v. Antoni Danta Hix (In re Carlos Bonding, LLC), No. M2008-01056-CCA-R3-CD, 2009 WL 856852, at *5 (Tenn. Crim. App. at Nashville, Mar. 31, 2009) (citing Black v. State, 290 S.W. 20, 21 (Tenn. 1927)). Nevertheless,

> [t]he authority to relieve sureties from liability may only be exercised in extreme cases, such as the death of the defendant or some other condition making it impossible for sureties to surrender the defendant; the good faith effort made by the sureties or the amounts of their expense are not excuses.

State v. Shredeh, 909 S.W.2d 833, 836 (Tenn. Crim. App. 1995). "To relieve sureties upon [lesser] grounds . . . would encourage defendants to forfeit their bail, and bring about a very lax administration of the criminal laws of the state." State v. Frankgos, 85 S.W. 79, 80-81 (Tenn. 1905); see In re: Chris Highers Bail Bonds, No. M2015-00801-CCA-R3-CD, 2016 WL 1221936 at *4 n.2 (Tenn. Crim. App. at Nashville, Mar. 29, 2016) (noting that despite the "age" of the Frankgos case, it has not been overruled or modified by our supreme court), application for perm. to appeal filed, (May 6, 2016).

We conclude that the trial court did not abuse its discretion by ordering American Bonding Company to pay $75,000. Although the company claims that it did not pursue Washam at law enforcement's request, Detective Sanders testified that she told the appellant's attorney that the appellant should not go to the victim's home but did not tell him that the appellant should not pursue Washam. The appellant's attorney testified that he "understood" Detective Sanders to say that the appellant should not interfere with her investigation. However, the attorney also recommended that the appellant not pursue Washam because it was a "plus" for law enforcement to apprehend Washam so that the appellant did not have to expend the money to do so. The trial court found that the appellant was entitled to some exoneration for its "hand" in apprehending Washam. Nevertheless, the court found that the appellant was responsible for $75,000 of the bond because it was at fault for knowing that Washam was in Australia but waiting until after the final forfeiture to apprehend him. In our view, the trial court discredited the appellant's claim that it did not attempt to obtain Washam sooner based upon law enforcement's request. The record does not preponderate against the findings of the trial court.

American Bonding Company argues that the $75,000 it is being ordered to pay is a larger amount and percentage of the bond than any other case in which a defendant has been returned to custody. However, this court recently affirmed a trial court's ordering the forfeiture of an entire $1,000,000 bond for a defendant who absconded after being indicted on three counts of rape of a child and was apprehended more than two years after the final forfeiture.[2] In re:  Chris Highers Bail Bonds, No. M2015-00801-CCA-R3-CD, 2016 WL 1221936 at *5. Moreover, other than Chris Highers Bail Bonds, we have found no other forfeiture case involving such a large bond amount for such serious charges. Here, Washam was released on a $200,000 bond after being charged with six counts of sexual offenses involving a child, including two counts of rape of a child. He absconded and was allowed to remain at large for more than six months. Under these circumstances, we are unwilling to say that the trial court abused its discretion.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

---

[2] Ten bail bonding companies agreed to act as sureties for the defendant's bond and posted partial bonds in amounts ranging from $50,000 to $300,000. In re Chris Highers Bail Bonds, No. M2015-00801-CCA-R3-CD, 2016 WL 1221936, at *1.