882 So.2d 414 (2004)
A-ALTERNATIVE RELEASE BAIL BONDS and Ranger Insurance Company, Appellants,
v.
MARTIN COUNTY, a political subdivision of the State of Florida, Appellee.
No. 4D03-1093.
District Court of Appeal of Florida, Fourth District.
August 11, 2004.
Rehearing Denied October 15, 2004.
*415 John A. Garcia of John A. Garcia, P.A., West Palm Beach, for appellants.
Stephen Fry, Martin County Attorney, and David A. Acton, Senior Assistant County Attorney, Stuart, for appellee.
FARMER, C.J.
The surety on a criminal appearance bond appeals a final order estreating the bond. The standard of review on the issue raised is de novo. We reverse.
In Martin County where this case arose, surety bonds for appearances are made thus. A surety company interested in furnishing a bond (for a price, of course) prepares a proposed bond form stating the charge(s) against the defendant and the amount of the bond. The agent then submits the proposed bond for approval to an official representing the state and county. If the state's official finds that the specific charge and the bond amount are stated correctly on the form, the official accepts the bond form and releases defendant in accordance with its terms. The bond form so accepted becomes the actual contract between the state and the surety.
The law is clear that the offense charged must be stated in an appearance bond and that the liability of a surety cannot be extended beyond the terms of the contract. State v. All Fla. Sur. Co., 59 So.2d 849, 850-51 (Fla.1952); Bankers Ins. Co. v. State, 437 So.2d 708, 709 (Fla. 2d DCA 1983) (explaining a bail bond is a three-party contract between the state, defendant and the surety). Although the offense may be described in general terms without technical detail, the surety is obligated under the bond only in regard to the offense(s) stated therein. State Fire & Cas. Co. v. State, 88 So.2d 274, 275 (Fla.1956); Midland Ins. Co. v. State, 354 So.2d 961, 962 (Fla. 3d DCA 1978). Where the criminal charges are substantially changed from the charges on which the bail bond was originally written, the surety is no longer obligated under the bond. Id.
In this case, the bond form states that the charge is "trafficking in cocaine." For that simple charge without any specification of amounts of cocaine involved, the mandatory penalty is a minimum of 5 years. If an amount of drugs had been stated as more than 400 grams, however, the mandatory penalty is a minimum of 15 years. The significant change in the risk to the surety from a minimum mandatory penalty of 5 years as against one for 15 years is obvious and needs no further illumination.
In this case, defendant was charged at the time of arrest with simple trafficking in cocaine without any specification. Sometime before the bond was written and accepted by the state, the State Attorney filed an Information stating a charge of trafficking in an amount greater than 400 grams. The surety's agent and the state's official  both of whom were unaware of the Information  operated on the basis that the charge for which the bond was being issued was simple trafficking without any specification of amount. The official accepted the bond form so stating, and defendant was released in reliance thereon.
Needless to say, he is now "in the *416 wind"[1] and the surety was forced to pay the face amount of the bond. The surety argued below  and repeats the argument here  that the contract between the parties is to insure an appearance for simple trafficking, not 400+ grams trafficking, and the surety cannot be liable for defendant's failure to appear for the more serious charge. To hold the surety so liable, it argues, is to modify the tenor of its engagement under the surety contract, something judges are not given the authority to do over its objection.
The form and content of these appearance bonds is singularly placed in the hands of the surety and the state. Each has its own strong interest in making sure that the bond form states the correct terms, from the differing perspective of each, of the surety's actual engagement. For courts to find excuses to relieve one of these parties from the effects of its lack of care in preparing or accepting a specific bond is to encourage them to relax their vigilance in drafting the form in the hope that a court will "bail them out" from the effects of their own negligence. It is to make courts the ultimate drafters of these contracts.
In this instance, the contract undeniably states an engagement to insure an appearance for charges only of simple trafficking in cocaine without any specification of a larger amount beyond the lowest penalty for this crime. Yet the trial court estreated the bond for the defendant's failure to appear for charges of trafficking in an amount of 400 grams or more. That is contrary to the terms of the written bond. It is thus contrary to established Florida law. State v. All Fla. Sur. Co., 59 So.2d 849, 850-51 (Fla.1952); Bankers Ins. Co. v. State, 437 So.2d 708, 709 (Fla. 2d DCA 1983). It follows that the decision of the trial court must be, and hereby is
REVERSED.
GUNTHER, J., concurs.
TAYLOR, J., dissents with opinion.
TAYLOR, J., dissenting.
I respectfully dissent. Appellants did not post bond for the defendant until after the information was filed. The information charged the defendant with "Trafficking in Cocaine  400 grams or more." Thus, when appellants posted bond, the simple trafficking charge for which the defendant was arrested no longer existed. It was superseded by the charges filed in the formal charging document. Consequently, the only "trafficking in cocaine" charge to which the parties to the bail bond contract could have agreed was the first degree felony offense (400 grams or more) which was then pending against the defendant. The bond form was thus sufficient to obligate the surety to produce the defendant in court on the trafficking charge filed in the information. See Midland Ins. Co. v. State, 354 So.2d 961, 962 (Fla. 3d DCA 1978)("the offense or offenses may be described by the bond in general terms without technical detail").
Contrary to appellants' position, this case is distinguishable from those situations where the state increased the charge or filed additional charges after bond was posted. Here, the state did not amend the information or add charges after appellants posted bond so as to relieve them of responsibility under the bond as written. I would therefore affirm the trial court's *417 order denying the surety's motions to vacate and remit bond forfeiture.
NOTES
[1] The phrase "in the wind"  describing one fleeing from justice who cannot be found  belongs to Michael Connelly, the author of several police procedural, mystery novels involving the character Hieronymus (Harry) Bosch.