FILED
12/14/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2018 Session

## STATE OF TENNESSEE v. SAUL ALDABA-ARRIAGA

## IN RE: RADER BONDING COMPANY

**Appeal from the Criminal Court for Davidson County**
**No. 2016-C-1186     Mark J. Fishburn, Judge**
_____

**No. M2017-01687-CCA-R3-CD**
_____

In this appeal, we must determine whether the Appellant, Rader Bonding Company ("Rader"), remained obligated as surety for the $7,500 bond set for the Defendant, Saul Aldaba-Arriaga, for a charge of driving under the influence of an intoxicant ("DUI"), second offense, and his $2,500 bond for a charge of driving on a revoked license when the State later obtained an indictment that increased the severity of the Defendant's misdemeanor charge of DUI second offense to a felony charge of DUI fourth offense and included additional charges. After the Defendant failed to appear in court on the indicted charges, the trial court initiated forfeiture proceedings and entered a final judgment of forfeiture against the Defendant and Rader following a hearing. We conclude that based on the specific and unique circumstances of this case, Rader's obligation under the bonding agreement for the $7,500 bond on the Defendant's DUI second offense charge in general sessions court did not extend to the indicted charge of DUI fourth offense and that as a result, the trial court erred in entering a judgment of final forfeiture against Rader on the $7,500 bond. We further conclude that Rader's obligation for the $2,500 bond on the Defendant's charge of driving on a revoked license in general sessions court continued when the Defendant was indicted for the same offense and that the trial court did not abuse its discretion in denying Rader's request for exoneration. Accordingly, the trial court's judgment is affirmed in part and reversed in part, and this case is remanded for further proceeding in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; and Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J. joined. ROBERT H. MONTGOMERY, JR., J., filed a separate dissenting opinion.

Joel H. Moseley, Jr., Old Hickory, Tennessee, for the appellant, Rader Bonding Company.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

On October 4, 2015, the Defendant, Saul Aldaba-Arriaga, was arrested and charged with DUI second offense, a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor. *See* T.C.A. §§ 55-10-401, -402(a)(2) (Supp. 2015), 55-50-504(a)(1). The affidavits of complaint stated that the Defendant ran a stop light and struck another vehicle, injuring the driver. The Defendant had a strong odor of alcohol on his breath and watery, bloodshot eyes, admitted to drinking three beers before driving, showed multiple signs of impairment during field sobriety tests, and consented to having his blood drawn. The arresting officer determined that the Defendant's license had been revoked due to two prior convictions for DUI first offense. According to the affidavits, the Defendant was arrested and charged with DUI second offense "due to a prior DUI 1st Offense charge in Maury County."

The Defendant's charges were each assigned a separate case number in general sessions court: GS742122 for the DUI second offense charge and GS742123 for the driving on a revoked license charge. The magistrate entered an order setting the Defendant's bond for each case. The order listed a $7,500 bond for case number GS742122 and a $2,500 bond for case number GS742123 for a total bond of $10,000. A "Criminal Appearance Recognizance" ("the bonding agreement") signed by the Defendant, Rader, and the court clerk also was filed and provided as follows:

> This case having been continued, thereupon the defendant, named above, with Surety, Rader, his security, acknowledge themselves to owe and be indebted to the State of Tennessee in the Penal sum of $10,000.00 jointly and severally, to be levied of their goods and chattels, lands and tenements; to be void, however, on condition that the defendant doth make his personal appearance before the Court of Davidson County, having jurisdiction of his cause, from day to day, then and there to answer to the State of Tennessee on a charge of:

- 2 -

| CASE/ WARRANT# | CHARGE | BOND | COURT DATE/TIME |
|---|---|---|---|
| GS742123 | 55-50-504 License - Driving on Revoked B MISD | $2,500.00 | 11/05/2015 08:30 AM |
| GS742122 | 55-10-401 Driving Under the Influence - 2nd A MISD | $7,500.00 | 11/05/2015 08:30 AM |
| | Total: | $10,000.00 | |

In January 2016, the Defendant waived a preliminary hearing, and the general sessions court bound the case over to the grand jury. In July 2016, the Defendant was indicted for: reckless aggravated assault through the use or display of a deadly weapon to wit: a motor vehicle, a Class D felony; DUI fourth or subsequent offense, a Class E felony; DUI per se with a blood-alcohol concentration of .20% or more, fourth or subsequent offense, a Class E felony; driving on a revoked license, a Class B misdemeanor; and failure to comply with the financial responsibility law at the time of an accident resulting in bodily injury or death for which the Defendant was at fault, a Class A misdemeanor. *See* T.C.A. §§ 39-13-102(a)(1)(B)(iii), (e)(1)(A)(v) (Supp. 2016); 55-10-401; -402(a)(4) (Supp. 2015); 55-12-139(c)(1), (3)(A); 55-50-504(a)(1).

According to the court minute entries, the Defendant appeared before the trial court on August 5th "being represented by counsel," and the case was continued until September 16th. When the Defendant failed to appear in court on September 16th, the trial court entered a conditional judgment of forfeiture of the $10,000 bond against the Defendant and Rader and had a writ of *scire facias* issued requiring the Defendant and Rader to appear within 180 days to show cause why the judgment should not become final.

On March 10, 2017, Rader filed an answer to the *scire facias* and a motion to set aside the conditional judgment and to be relieved as the surety. In addition to raising issues regarding the sufficiency of the *scire facias*, Rader argued that it should be relieved as surety because the State abandoned the Defendant's charges brought in general sessions court that were the subject of the bond agreement and because the return of the indictment began a new proceeding that was not covered by the bond agreement. Rader also argued that the State breached its implied covenant of good faith and fair dealing by misleading Rader as to the nature and severity of the charges against the Defendant and inducing Rader to enter into the bond agreement, by failing to either continue to prosecute the charges bound over by the general sessions court or dismiss the charges once the State sought an indictment on the new charges, and by failing to have a capias issued and the Defendant taken into custody once the indictment was returned.

- 3 -

The State filed a response maintaining that case number GS742122, the DUI charge, was the basis for the DUI charges in the indictment and that case number GS742123 was the basis for the charge of driving on a revoked license in the indictment.

During the hearing, Rader did not present any evidence but reiterated the arguments raised in its motion. Counsel for Rader argued that Rader's evaluation of the Defendant's risk of flight and its decision to enter into the bond agreement were based upon the Defendant's charges in the general sessions court and not upon the increased and additional charges in the indictment. Counsel also argued that by increasing and adding new charges without formally dismissing the charges from the general sessions court and without having a capias issued against the Defendant, the State materially increased Rader's risk of forfeiture. Counsel for Rader acknowledged evidence that the Defendant fled due to the indictment was "circumstantial only." Counsel for Rader stated that, regardless, Rader was not asking the trial court to assume that the Defendant fled due to the charges in the indictment but was requesting that the trial court hold the State and Rader to the terms of the bond agreement, which limited Rader's responsibility to the Defendant's charges as they appeared in general sessions court. The State reiterated its argument that the charges in the indictment were a continuation of the Defendant's charges in general sessions court.

The trial court subsequently issued oral findings and a written order denying Rader's claim for relief. The trial court found that neither the grand jury nor the State exceeded their authority in returning the indictment, and it rejected Rader's claims that the State breached its duty of good faith. The trial court also found that although the indictment included additional charges, the facts alleged in the affidavits of complaint indicated that additional charges were possible and that the additional charges did not change "the face amount of the bond" or Rader's financial risk. The trial court found Rader failed to submit any evidence that the Defendant's failure to appear was motivated by the additional charges. The trial court entered a final judgment of $10,000 plus costs against the Defendant and Rader to be awarded to the State.

Rader filed a motion to alter or amend the trial court's order and final judgment pursuant to Tennessee Rule of Civil Procedure 59.04 and a memorandum of law. Rader again urged the trial court to require the parties to be bound by the terms of the bond agreement and argued that the State did not have the authority to unilaterally modify or extend the bond agreement beyond its written terms to a new case and new charges. Following a hearing, the trial court entered an order denying the motion, and Rader subsequently filed a notice of appeal.

**ANALYSIS**

Rader contends that the trial court erred in entering the final judgment of forfeiture against Rader for $10,000. Specifically, Rader maintains that: (1) the State abandoned its prosecution in general sessions court of the Defendant's charges which were subject to the bond agreement and the indictment constituted new proceedings to which the bond agreement did not apply; (2) the terms of the bonding agreement did not extend to the charges in the indictment; and (3) the State materially increased Rader's risk on the bond and breached its implied covenant of good faith and fair dealing on the bond agreement. The State responds that this court's review is limited to the trial court's denial of Rader's motion to alter or amend and that the trial court properly concluded that Rader was not released of its obligation on the bond.[1]

As a preliminary matter, we must first address the State's contention that this court's review on appeal is limited to the issue of whether the trial court erred in denying Rader's motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04. A timely filed Rule 59.04 motion tolls the time for filing a notice of appeal in a civil action. Tenn. R. App. P. 4(b)(4); *see In re Guy James Bonding*, No. M2003-01033-CCA-R3-CD, 2004 WL 1402562, at *1 n.3 (Tenn. Crim. App. June 23, 2004) (concluding that the bail bond forfeiture process is a civil proceeding governed by the Tennessee Rules of Civil Procedure). Because Rader filed a timely post-trial motion, it was entitled to appeal both the underlying judgment of final forfeiture and the order denying the motion to alter or amend the judgment. *See Burris v. Burris*, 512 S.W.3d 239, 254 n.11 (Tenn. Ct. App. 2016).

The State maintains that because Rader stated in its notice of appeal that it was appealing from the trial court's judgment rendered on July 25, 2017, in which the trial court denied Rader's motion to alter or amend, this court's review is limited to the question of whether the trial court erred in denying the motion to alter or amend. The State cites to no authority to support its position. Moreover, "the notice of appeal plays no part in defining the scope of appellate review." Tenn. R. App. P. 3(f) Advisory Comm'n Cmts. Tennessee Rule of Appellate Procedure 13(a) governs the scope of review and provides that "any question of law may be brought up for review." "[T]his subdivision rejects use of the notice as a review-limiting device," including the federal practice of limiting the issues that an appellant may raise on appeal to those affecting the portion of the judgment specified in the notice of appeal. Tenn. R. App. P. 13(a) Advisory Comm'n Cmts. Rather, Rule 3(f), when read in conjunction with Rule 13(a),

---

[1] While Rader alleges in a footnote in its "Statement of Facts" that the *scire facias* was insufficient, Rader does not address the issue in the "Argument" section of its brief or offer any support for its claim. Thus, the issue is waived. *See* Tenn. R. App. P. 27(a); Tenn. Ct. Crim. App. R. 10(b).

"permits any question of law to be brought up for review … as long as any party formally declares an intention to appeal in a timely fashion."  Tenn. R. App. P. 3(f) Advisory Comm'n Cmts.  On appeal, Rader does not focus its arguments on the trial court's denial of its motion to alter or amend but maintains that the trial court erred in entering the final judgment of forfeiture against Rader.  Accordingly, we will review the propriety of the trial court's final judgment.

A bail bond is a contract between the State on one side and the defendant and the defendant's surety on the other, "whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of bail set by the court."  *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002).  Prior to or at the time of the execution of the bail bond, a bondsman and the defendant enter into a contract whereby the bondsman agrees to act as the defendant's surety for a fee and the defendant agrees to appear for all scheduled court appearances.  *Id.*  "The bondsman only makes a profit when he is able to collect fees from the defendant and avoid paying the amount of the bond to the court." *Id.* (citation omitted).  Because there is a risk that the defendant will flee or refuse to appear in court after signing the contract and securing his release, the bondsman must protect his investment by assessing the risk of flight before writing the bond and maintaining contact with the defendant after the bond is written.  *Id.*

The forfeiture of bail bonds is controlled by statute.  *See* T.C.A. § 40-11-201 *et. seq.*  When a defendant fails to appear in court, the trial court may enter a conditional judgment of forfeiture against the defendant and his sureties.  T.C.A. § 40-11-201(a). Upon entering a judgment of conditional forfeiture, the trial court must issue a writ of *scire facias* requiring the defendant and his sureties to show cause why the judgment should not become final.  T.C.A. § 40-11-202.  The surety has 180 days from the date of service of the *scire facias* to produce the defendant; otherwise, the court may enter a final judgment.  T.C.A. § 40-11-139(b).

A surety may petition the trial court for relief from forfeiture.  T.C.A. § 40-11-204(a); *see In re Paul's Bonding Co., Inc.*, 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001). The trial court must grant a hearing, and the surety has the burden of proving that its petition for exoneration should be granted.  *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 204; *In re Paul's Bonding Co., Inc.*, 62 S.W.3d at 193.  The surety may be exonerated from forfeiture by surrendering the defendant to the court at any time before paying the judgment of forfeiture.  T.C.A. § 40-11-203.  Otherwise, the surety must seek relief pursuant to Tennessee Code Annotated section 40-11-204(a), which provides that

> the judges of the general sessions, circuit, criminal and supreme courts may
> receive, hear and determine the petition of any person who claims relief is

merited on any recognizances forfeited, and so lessen or absolutely remit the same, less a clerk's commission …, and do all and everything therein as they shall deem just and right, and consistent with the welfare of the state, as well as the person praying for relief. This power shall extend to the relief of those against whom final judgment has been entered whether or not the judgment has been paid, as well as to the relief of those against whom proceedings are in progress.

T.C.A. § 40-11-204(a)(1).

The trial court's discretion under section 40-11-204 is "broad and comprehensive, empowering trial courts to make determinations in accordance with [their] conception of justice and right." *In re Paul's Bonding Co., Inc.*, 62 S.W.3d at 194 (internal quotations and citations omitted). Accordingly, we review a trial court's decision for an abuse of discretion and grant the trial court "the benefit of its decision unless the trial court 'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *Id.* (quoting *State v Shuck*, 953 S.W.2d 622, 669 (Tenn. 1997)). However, "'[b]oth the interpretation of statutes and the interpretation of contracts are questions of law and, therefore, require a de novo review on appeal with no presumption of correctness given to the lower courts' conclusions of law.'" *State v. Aliscia Caldwell*, No. M2013-01368-CCA-R3-CD, 2014 WL 3764499, at *6 (Tenn. Crim. App. July 31, 2014) (quoting *State ex rel. Pope v. U.S. Fire Ins. Co.*, 145 S.W.3d 529, 533 (Tenn. 2004)).

Rader contends that its obligations under the bonding agreement did not extend to the Defendant's charges in the indictment. Rader specifically contends that (1) the grand jury's return of the indictment resulted in new criminal proceedings that were not subject to the bonding agreement; (2) the terms of the bonding agreement did not extend to the Defendant's indicted charges; and (3) Rader should be exonerated from its obligations because the State breached its implied covenant to avoid increasing Rader's risk under the bonding agreement by returning an indictment that charged additional and more severe charges. The State responds that Rader remained obligated for the $10,000 bond pursuant to Tennessee Code Annotated section 40-11-130(a)(1) because there had been no disposition in accordance with section 40-11-138.

Tennessee Code Annotated section 40-11-130(a)(1), which addresses the length of time in which a bond on a charge remains in effect, provides in pertinent part:

> If a defendant in a criminal case executes a bond or recognizance before any court or other person authorized by law to take a bond or recognizance for the defendant's personal appearance before a court to answer a criminal

charge and there has not been a disposition pursuant to § 40-11-138(b), the bond or recognizance shall be valid and binding upon the defendant and the defendant's sureties, until the time allowed by law for the defendant to appeal a finding of guilt to the court of criminal appeals.

A disposition under Tennessee Code Annotated section 40-11-138(b) includes circumstances in which "the charge against the surety's principal is disposed of by acquittal, agreement with the state, whether diversion or otherwise, or retirement." T.C.A. § 40-11-138(b)(1). "If the charge is disposed of by conviction or a plea of guilty, the bond shall remain in effect until the court renders the defendant's sentence." T.C.A. § 40-11-138(b)(2)(A). "If the defendant is placed on pre-trial, post-plea or judicial diversion, community correction, fined or if the defendant's sentence is suspended and probation granted, any such action shall constitute a disposition pursuant to § 40-11-138(b)." T.C.A. § 40-11-130(b)(1).

## A. Return of the Indictment

Rader maintains that the return of the indictment by the grand jury was the beginning of a new criminal proceeding which was not subject to the bond agreement. Rader relies upon *Waugh v. State*, 564 S.W.2d 654, 660 (Tenn. 1978), in which our supreme court held that the magistrate's dismissal of the bind-over order and release of the defendant from custody terminated the criminal proceeding and that the return of the indictment was the beginning of a new proceeding. In the present case, however, the general sessions judge did not dismiss the charges against the Defendant but bound the cases over to the grand jury. Thus, the general sessions court's decision did not result in a disposition of the charges that would have relieved Rader of liability pursuant to Tennessee Code Annotated section 40-11-138(b). Moreover, the State did not abandon the Defendant's charges in the general sessions court but based the counts in the indictment for DUI and driving on a revoked license upon the Defendant's charges in the general sessions court. Accordingly, the return of the indictment by the grand jury did not constitute the beginning of new criminal proceedings but was a continuation of the proceedings that initiated in the general sessions court.

Rader maintains that the State, in seeking an indictment, and the grand jury, in returning the indictment, were limited to the Defendant's charges at the general sessions level. According to Rader, the State and the grand jury exceeded their respective authorities by increasing the Defendant's original charges and including additional charges in the indictment.

Our supreme court has recognized that "[p]rior to indictment, the district attorney 'has virtually unbridled discretion in determining whether to prosecute and for what

- 8 -

offense.'" *State v. Mangrum*, 403 S.W.3d 152, 163 (Tenn. 2013) (quoting *Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn. 1978)). "'[S]o long as the prosecutor has probable cause to believe that the accused committed an offense …, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely within his discretion.'" *State v. Harris*, 33 S.W.3d 767, 771 (Tenn. 2000) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). The function of the grand jury is to determine probable cause. *State v. Brackett*, 869 S.W.2d 936, 938 (Tenn. 1993). "The grand jury may indict an accused for any 'indictable or presentable offense[] found to have been committed or to be triable within the county.'" *State v. Spradlin*, 12 S.W.3d 432, 434 n.3 (Tenn. 2000) (quoting Tenn. R. Crim. P. 6(d)).

This court has rejected the contention that the authority of the State and the grand jury is limited by the actions and findings of the general sessions court. *See State v. D'Anna*, 506 S.W.2d 200, 203 (Tenn. Crim. App. 1973) (holding that the grand jury's authority and power to return a presentment or an indictment upon finding probable cause "is in no way interfered with or prevented by the fact that a committing magistrate fails to find probable cause and discharges the accused in a preliminary hearing"); *see also State v. Brian Robert Lawson*, No. M2017-00238-CCA-R3-CD, 2017 WL 4407832, at *4 (Tenn. Crim. App. Oct. 3, 2017) (holding that the State acted within its authority and discretion in seeking and obtaining an indictment charging the defendant with domestic assault by causing bodily injury even though the general sessions court found at the preliminary hearing that probable cause existed to show that the defendant committed domestic assault by offensive contact rather than by causing bodily injury), *perm. app. denied* (Tenn. Feb. 14, 2018). We conclude that the State and the grand jury did not exceed their respective authorities by increasing the Defendant's original charges and including additional charges in the indictment.

### B. Effect of the Indicted Charges on Rader's Obligations

The bond order signed by the magistrate listed the applicable case numbers from the general sessions court and did not list the specific charges that applied to each case number. However, in the trial court, the State attached documentation to its pleadings establishing that only the indicted charges for DUI fourth offense, DUI per se fourth offense, and driving on a revoked license were based on the Defendant's charges in general sessions court. Accordingly, we must determine whether Rader's obligation under the bond for the Defendant's charges in general sessions court continued for these indicted charges pursuant to Tennessee Code Annotated section 40-11-130(a)(1).

In interpreting a statute, this court must "assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute." *State v. Gibson*, 506 S.W.3d 450, 455 (Tenn. 2016) (citing *State v. Davis*, 484 S.W.3d

138, 144 (Tenn. 2016); *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016)). In determining legislative intent, this court must first examine the plain language of the statute and give the words of the statute their natural and ordinary meaning. *Davis*, 484 S.W.3d at 144-45; *Smith*, 484 S.W.3d at 403. When the statute's words are clear and unambiguous, we must enforce the statute as written. *Gibson*, 506 S.W.3d at 455-56 (citing *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016)). "We presume that every word in the statute has meaning and purpose and should be given full effect unless it violates the obvious intent of the General Assembly." *Id.* (citing *Dycus*, 456 S.W.3d at 924; *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010)). "Statutes, 'in pari materia,' are to be read together, in order to advance their common purpose or intent." *State v. Davis*, 173 S.W.3d 411, 414 (Tenn. 2005). "[S]pecific statutory language will control over general statutory language." *Id.* at 415.

Bail is set on the criminal offense for which a defendant is charged and not criminal offenses for which the defendant may be charged in the future as a result of a criminal episode. The language of both sections 40-11-130(a)(1) and 40-11-138(b) focus upon the "charge" against the defendant upon which the bond is based. When read together, we conclude that the statutes require that a surety remain obligated on a bond set for a criminal charge until that charge is disposed under section 40-11-138(b). In the present case, Rader remained obligated on the $2,500 bond set for the Defendant's charge of driving on a revoked license in general sessions court when the Defendant was the indicted for the same charge. However, the statutes do not address Rader's obligation on the $7,500 bond for DUI second offense when the Defendant was indicted on the increased charge of DUI fourth offense. While the DUI second offense charge has not been disposed of under section 40-11-138(b), the State is no longer prosecuting the Defendant for that specific offense.

Rather, "because a bail bond is nothing more than a type of contract," the proper resolution of this issue depends upon an application of the principles of contract law. *State v. Clements*, 925 S.W.2d 224, 226-27 (Tenn. 1996) (applying the principles of contract law in holding that the cash bail bond deposited by the defendant's father could not be attached to cover fines and costs incurred by the defendant). A contract is enforceable "only to the extent that it is assented to by the parties." *Id.* at 227. The bond agreement entered into by the State, Rader, and the Defendant did not include any language expanding Rader's obligations to include the later-indicted DUI fourth offense charges. *Cf. People v. Ind. Lumbermens Mut. Ins. Co.*, 202 Cal. App. 4th 1541, 1549-50 (Cal. Ct. App. 2012) (holding that the language of the bond agreement encompassed the additional charge against the defendant when the agreement provided that the surety undertook to guarantee the defendant's appearance "to answer any charge in the accusatory pleading based upon the acts supporting the complaint filed against him/her *and all duly authorized amendments thereof, in whatever court it may be prosecuted*")

- 10 -

(emphasis in original); *People v. Int'l Fidelity Ins. Co.*, 185 Cal. App. 4th 1391, 1395-96 (Cal. Ct. App. 2010) (same).

Applying principles of the law of contracts and sureties, some courts have recognized,

> An increase in the severity of a charge or charges for which a surety is already liable on an existing bond increases the surety's risk under the bond contract. It follows that such an increase in the charge or charges without a surety's consent alters the terms of the bond contract and discharges the surety's obligations under the bond.

*Fireline Bail Bonds v. Brock*, 110 So. 3d 11, 14 (Fla. Dist. Ct. App. 2013). By increasing the Defendant's charge from a misdemeanor to a felony, the State increased the Defendant's possible punishment and, thus, increased Rader's risk under the bonding agreement. "Such a unilateral alteration of the contract's terms that increases the surety's risk entitled the surety to discharge under settled principles of suretyship." *Id.* at 15; *see Integrity Bail Bonds v. Pineallas Cnty. Bd. of Cnty. Comm'rs.*, 884 So. 2d 85, 86 (Fla. Dist. Ct. App. 2004) (holding that a surety was discharged from its obligations when the State increased the charged from a third-degree felony to a second-degree felony); *A-Alternative Release Bail Bonds v. Martin Cty.*, 882 So. 2d 414, 415-16 (Fla. Dist. Ct. App. 2004) (same).

The plain terms of the bonding agreement limited Rader's obligations to the charge of DUI second offense. Requiring Rader to remain obligated for the Defendant's appearance for a DUI charge under the bonding agreement when the State increased the charge to a felony offense would result in a unilateral alteration of the terms of the bonding agreement. "A court may not unilaterally alter the terms of a bail bond contract unless statutorily authorized." *State v. Robert Bradley, Jr.*, No. W2004-00113-CCA-R3-CD, 2005 WL 1105182, at *2 (Tenn. Crim. App. May 5, 2005). Because there is no statutory authority providing for such an alteration, we conclude that once the State obtained an indictment increasing the Defendant's charge of DUI second offense to DUI fourth offense, Rader was discharged from its obligations as surety as it related to the $7,500 bond for the DUI second offense charge. Accordingly, the trial court erred in applying the judgment of forfeiture to Rader for the $7,500 bond.

We emphasize that our holding is limited to the specific and unique circumstances of this case. Based upon the information included in the affidavit of complaint, it appears that the State was unaware of the extent of the Defendant's prior DUI convictions when the Defendant was charged with DUI second offense. Since the Defendant's arrest, however, Tennessee Code Annotated section 40-11-142 was enacted and provides that

following an arrest for certain enumerated offenses, including DUI, law enforcement must exercise due diligence in determining a defendant's prior arrests for such offenses by examining the available databases to which the agency has access prior to the determination of bond for the arrested offense. *See* T.C.A. § 40-11-142 (Supp. 2016). This statute reduces the risk of a recurrence of a situation in which the defendant is initially charged with and a bond is set on a DUI but the State later increases the charge to a felony offense upon learning of the extent of the defendant's prior DUI convictions. Furthermore, the State could have requested that the trial court set a new and increased bond when the Defendant appeared before the trial court following the return of the indictment.

## C. Breach of Implied Covenant

Rader remained obligated under the bonding agreement for the $2,500 bond for the Defendant's charge of driving on a revoked license when he was indicted for the offense. Rader asserts that the trial court erred in failing to relieve Rader of its obligation under the bond agreement because the State breached its implied covenant to avoid increasing Rader's risk under the bonding agreement by returning an indictment that charged additional and increased charges.

A trial court's discretionary authority to relieve sureties from liability pursuant to section 40-11-204 is limited to "'extreme cases, such as the death of the defendant or some other condition making it impossible for sureties to surrender the defendant; the good faith effort made by the sureties or the amount of their expense are not excuses.'" *In re Paul's Bonding Co.*, 62 S.W.3d at 194 (quoting *State v. Shredeh*, 909 S.W.2d 833, 836 (Tenn. Crim. App. 1995)). The restrictive interpretation of section 40-11-204 is based in part on public policy considerations and appears to stem from the United States Supreme Court's recognition that a surety is limited to relief to those situations "when performance is rendered impossible by a supervening act of God, act of the State that is the beneficiary of the bail bond, or act of the law that is operative in the beneficiary State and obligatory in its effect upon her authorities." *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 203 (citing *Taylor v. Taintor*, 83 U.S. 366, 369 (1873)).

A ground for relief will not constitute an "extreme case" for exoneration for purposes of Tennessee Code Annotated section 40-11-204 if it is the realization of a risk that the surety assumed in entering into the bail bond agreement. *Id.; see In re: Paul's Bonding Co.*, 62 S.W.3d at 195. "'[B]y entering into a bail bond agreement, a surety does not assume the risk that the State will interfere with the surety's performance of its obligation under the bail bond.'" *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 203 (citing *Reese v. United States*, 76 U.S. 12, 21-22 (1869)). There is an implied covenant on the part of State that "'it will not in any way interfere with th[e] covenant

between [the principal and his sureties], or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.'" *Id.* (quoting *Reese*, 76 U.S. at 22). "A state's material breach of this implied covenant will relieve a surety of its obligation under a bail bond." *Id.* The State's breach, however, must be the cause of the surety's inability to satisfy its obligation under the bail bond. *Id.*

Rader bound itself to have the Defendant present to answer a charge of driving on a revoked license, and the State only demanded that Rader perform what it had bound itself to do. The fact that the State sought to try the Defendant for additional crimes did not alter Rader's obligation to produce the Defendant on the original charge of driving on a revoked license. *See e.g., Fireline Bail Bonds v. Brock*, 110 So. 3d at 15 (providing that "the addition of a new charge or charges to an existing indictment or information does not result in a surety's discharge on an existing bond because the new charge or charges do not work any change in the surety's contractual obligation"); *Kansas v. Indem. Ins. Co. of N. Am.*, 672 P.2d 251, 253 (Kan. Ct. App. 1983) (holding that a surety was not discharged from liability on a bond conditioned upon the defendant's appearance on an aggravated assault charge when the State amended the charging document to add counts for rape, kidnapping, and unlawful restraint).

This court previously rejected a bonding company's claim for exoneration based on its argument that the State unilaterally increased the bonding company's risk by indicting the defendant for an additional and more serious offense in *State v. Carlos Alberto Cabellero-Grajeda*, No. M2004-02097-CCA-R3-CD, 2005 WL 1931402, at \*5 (Tenn. Crim. App. Aug. 11, 2005). In that case, the bonding company agreed to secure the defendant's appearance on a charge of money laundering. *Id.* at \*1. The State later indicted the defendant for the money laundering charge and a charge of conspiracy to deliver 300 pounds of marijuana within 1,000 feet of a school zone, a Class A felony. *Id.* In rejecting the bonding company's claim for exoneration, this court held that if the bonding company was concerned that the defendant would not appear in court to answer the charges, the bonding company's remedy would have been to surrender the defendant and be exonerated from liability pursuant to Tennessee Code Annotated section 40-11-132. *Id.* at \*5; *see* T.C.A. § 40-11-132 (listing the circumstances under which a surety may surrender a defendant in order to be exonerated). This court determined that the bonding company did not establish that the circumstances constituted an "extreme case" whereby it would have been impossible for the bonding company to surrender the defendant. *Carlos Alberto Cabellero-Grajeda*, 2005 WL 1931402, at \*6. This court stated that while the bonding company had been unable to ascertain the defendant's whereabouts, "the risk that a criminal defendant will flee is exactly the type of risk assumed by a professional bail bondsman when executing a bail bond and agreeing to secure a criminal defendant's appearance in court." *Id.*

Rader contends that had a capias been issued pursuant to Tennessee Rule of Criminal Procedure 9 upon return of the indictment, Rader could have surrendered the Defendant and sought exoneration. Rule 9(a) provides that upon the return of an indictment or a presentment, the clerk must issue a capias or a criminal summons for a defendant "(1) who is not in actual custody; (2) who has not been released on recognizance or bail; or (3) whose bail has been declared forfeited." "The clerk shall issue a criminal summons (instead of a capias) after an indictment or presentment and for any subsequent process when so requested by the district attorney general or directed by the court." *Id.* In support of its contention that a capias was required following the Defendant's indictment for the additional offenses, Rader relies upon this court's opinion in *State v. Norman G. Copeland*, in which this court agreed with the State's argument that Rule 9(a) only prohibits the issuance of a capias upon indictment for the same offense for which the defendant was previously released on bond. No. 01C01-9602-CC-00057, 1997 WL 137407, at *4-5 (Tenn. Crim. App. Mar. 27, 1997).

Regardless of whether a capias should have been issued upon the return of the indictment in the present case, the absence of a capias did not affect Rader's remedy to surrender the Defendant and be exonerated from the bond in accordance with Tennessee Code Annotated section 40-11-132. A bondsman or surety may surrender a defendant and be exonerated from the bond where "[t]he bondsman or surety has good cause to believe the defendant will not appear as ordered by the court having jurisdiction." T.C.A. § 40-11-132(2). As reflected by this court's opinion in *Carlos Alberto Cabellero-Grajeda*, the return of an indictment that includes additional, more severe charges may constitute good cause for a surety to believe that the defendant will not appear in court as ordered. Rader does not claim that it did not have notice of the indictment prior to the Defendant's absconding. Because Rader has failed to establish an "extreme case" justifying exoneration, the trial court did not abuse its discretion in denying Rader's request for exoneration for the $2,500 bond attached to the charge of driving on a revoked license.

## CONCLUSION

We conclude that based on the specific and unique circumstances of this case, Rader's obligation under the bonding agreement for the $7,500 bond on the Defendant's DUI second offense charge in general sessions court did not extend to the indicted charges of DUI fourth offense and that as a result, the trial court erred in entering a judgment of final forfeiture against Rader on the $7,500 bond. We further conclude that Rader's obligation for the $2,500 bond on the Defendant's charge of driving on a revoked license in general sessions court continued when the Defendant was indicted for the same offense and that the trial court did not abuse its discretion in denying Rader's request for

exoneration. Accordingly, the trial court's judgment is affirmed in part and reversed in part, and this case is remanded for further proceeding in accordance with this opinion.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE