IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville March 18, 2025

## IN RE BAIL U OUT BONDING

**Appeal from the Criminal Court for Sumner County[1]**
**No. 2023CR-190     Dee David Gay, Judge**
_____

## No. M2024-00972-CCA-R3-CO
_____

When Daniel Barillas failed to appear for a scheduled court appearance, the trial court entered a conditional forfeiture against Mr. Barillas and Bail U Out Bonding ("Bail U Out").  Bail U Out moved for exoneration of the bail bond, claiming that Mr. Barillas had been deported.  Following a hearing, the trial court ordered forfeiture of the full amount of the bond.  After a thorough review, we determine that the trial court did not abuse its discretion and affirm the judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Clare A. Zanger, White House, Tennessee, for the appellant, Bail U Out Bonding.

Jonathan Skrmetti, Attorney General and Reporter; Ryan A. Dugan, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Documents relating to the bond proceedings were styled in accordance with the underlying criminal case, *State v. Daniel A. Barillas*, and *In re Bail U Out Bonding* was added.  Notwithstanding the style of the case in the trial court, because Bail U Out Bonding, rather than Mr. Barillas, is the appellant in these proceedings, we have styled this opinion "*In re Bail U Out Bonding.*"  *See In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 206, n.1 (Tenn. Crim. App. 2002); *In re AB Bonding Co., Inc.*, No. M2003-02813-CCA-R3-CD, 2004 WL 2853540, at *3 (Tenn. Crim. App. Dec. 10, 2004), *no perm. app. filed*.

## OPINION

### *Procedural History*

In April 2023, Daniel Barillas was charged with one count of trafficking a person for a commercial sex act and one count of patronizing prostitution where the object of the offense was a law enforcement officer, eighteen (18) years of age or older posing as a minor, and the general sessions court set his bail at $65,000. Bail U Out was paid $6,537 to act as surety, and Mr. Barillas made bail and was released from custody. Mr. Barillas was arraigned in Sumner County Criminal Court on April 21, 2023, and appeared in court for settlement negotiations on July 31, 2023. On September 21, 2023, Mr. Barillas failed to appear for a court hearing, and a conditional forfeiture was entered. A scire facias was issued to Bail U Out on September 26, 2023.

On April 15, 2024, Bail U Out filed a Motion for Relief from Bond ("the Motion"), claiming that Mr. Barillas "has been deported to his country of origin," "is not likely to reappear in this [c]ourt, has already failed to appear in this [c]ourt, and has violated the contractual provisions between himself and his bonding company." Attached to the Motion was a copy of an "Order of the Immigration Judge" dated August 11, 2023, which provided in pertinent part:

> Based on [Mr. Barillas's] admissions, the court has determined that [Mr. Barillas] is removable from the United States based on the charge(s) set forth in the Notice to Appear.[2] [Mr. Barillas] has made an application solely for voluntary departure in lieu of removal and has waived appeal of all issues.
>
> **ORDER:** Accordingly, it is HEREBY ORDERED that [Mr. Barillas] be GRANTED pre-conclusion voluntary departure under Immigration and Nationality Act (INA) § 240B(a), in lieu of removal, without expense to the Government, on or before 10/10/2023, or any extensions as may be granted by the Department of Homeland Security (DHS), and under any other conditions DHS may direct.
>
> . . . .
>
> It is FURTHER ORDERED:
>
>  . . . .

---

[2] The record does not contain the referenced Notice to Appear.

- 2 -

that [Mr. Barillas] provide DHS with [Mr. Barillas's] passport or other travel documentation sufficient to assure lawful entry into the country to which [Mr. Barillas] is departing within 60 days of this order, or within any time extensions that DHS may grant and/or

Other: under safeguards.

### *Hearing on the Motion*

On April 29, 2024, the trial court held an evidentiary hearing on the Motion. William Gant, the manager of Bail U Out, testified that he knew Mr. Barillas was in the United States illegally and that the first thing he did before Bail U Out agreed to make the bond was to check to make sure there was no Immigration and Customs Enforcement (ICE) hold on Mr. Barillas. He next spoke to Mr. Barillas's employer and vetted the cosigner. He said that, during his seventeen years as an employee of Bail U Out, he had three bailees deported. Mr. Gant testified that, in his experience, if ICE intends to put a hold on a defendant, they "normally put a hold on them prior to them receiving the bond." He said that, once a defendant receives a bond, ICE usually "drops the hold." He said that, after Mr. Barillas missed the September 21, 2023 court appearance, a failure to appear warrant was issued and that Bail U Out did an investigation and reported to the court that Mr. Barillas had been deported to his home country of El Salvador. When questioned about the steps Bail U Out had taken to bring Mr. Barillas back from El Salvador, Mr. Gant said, "[W]e've tried to contact ICE and asked them could we get the paperwork." Mr. Gant added that we cannot "just go grab someone from a different country to bring them back over here."

Mr. Gant said he "absolutely" knew Mr. Barillas was in the country illegally when Bail U Out made the bond. Mr. Gant agreed that making Mr. Barillas's bond was "a calculated risk[.]" Concerning the risk Bail U Out took in deciding to make a bond, Mr. Gant stated:

Unfortunately, we all take the risk, right? The risk is not just us saying that we're going to make sure this person comes back to court. The risk is does this person have a ICE hold, is this person eligible to make bond. If the person was obscuring justice here on United States ground, yes, we're going to do everything in our possibility to apprehend him, bring him back to court.

Once the federal get[s] involved, it oversees anything local justice, and that's what was told to me. So we couldn't just, like you just said, go try and apprehend him in El Salvador. We couldn't do that.

The trial court noted that "[t]his company made a $65,000 bond knowing that this person was an illegal alien" and that "[t]he only thing they did was make sure that there was no ICE hold." The court found "that the bail bonding business was risky, [and] that the nationality of the defendant should have been the subject of reasonable inquiry." The court also noted that Bail U Out "was fully aware that the defendant was not a citizen of the United States" when it entered into the agreement and "should have done further investigation and possibly just refrained from making a bond of an illegal alien because of these particular circumstances." The court denied the Motion and ordered Bail U Out to forfeit the full amount of the $65,000 bond. Bail U Out timely appealed.

### *Analysis*

On appeal, Bail U Out raises four issues, claiming (1) the trial court erred in finding that Mr. Barillas's nationality was "a factor to be considered by bonding companies in determining whether a bond should be made"; (2) the trial court erred in finding full forfeiture of the bond was "an appropriate interpretation of a bonding company['s] liability under Tennessee Code Annotated § 40-11-132" when Mr. Barillas has been deported from the United States; (3) whether it is "a reasonable requirement under Tennessee Code Annotated § 40-11-132 to require that bonding companies cross international borders to return deported individuals to the [c]ourt"; and (4) whether Bail U Out met "its obligation" under Tennessee Code Annotated section 40-11-132 "in locating [Mr. Barillas] and informing the [c]ourt of [Mr. Barillas]'s whereabouts." The State claims that the trial court acted within its discretion when it denied the Motion. We agree with the State.

### *Standard of Review*

Trial courts have "broad and comprehensive" discretion to relieve or not relieve bail bondsmen or other sureties from the liability of bail. *State v. Shredeh*, 909 S.W.2d 833, 835 (Tenn. Crim. App. 1995). We therefore review the trial court's decision under an abuse of discretion standard which "does not permit an appellate court to substitute its judgment for that of the trial court." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). An abuse of discretion occurs when the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

If a defendant released on bail fails to appear in court as required, "a conditional judgment may be entered against the defendant and the defendant's sureties[.]" Tenn. Code Ann. § 40-11-201(a). A scire facias must then be issued to notify the defendant and the defendant's sureties that they are required "to show cause why the judgment shall not be made final." Tenn. Code Ann. § 40-11-202. Before the forfeiture becomes final, courts must afford a defendant and the sureties an evidentiary hearing to determine whether the

forfeiture should be excused, lessened, or absolutely remitted. *In re Paul's Bonding Co., Inc.*, 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001). The authority to relieve a surety from liability "may only be exercised in extreme cases, such as the death of the defendant or some other condition making it impossible for sureties to surrender the defendant; the good faith effort made by the sureties or the amounts of their expense are not excuses." *Shredeh*, 909 S.W.2d at 836 (citations omitted).

> In *Shredeh*, this court noted that the trial court
>
> made specific determinations of fact, finding that the bail bonding business was risky; that the nationality of the defendant should have been the subject of reasonable inquiry; and that at least one of the participating companies entered into the agreement fully aware that the defendant was not a citizen of the United States.

*Id*. The trial court in *Shredeh* found that "the bonding companies had exercised some diligence, but not enough" and ordered sixty percent of the amount of the bond to be forfeited, and this court affirmed the judgment for partial forfeiture. *Id.*

This court also affirmed a partial forfeiture of bail for one defendant and the complete forfeiture of bail for two other defendants in *In re Paul's Bonding Co., Inc*., 62 S.W.3d at 189. After the trial court issued a conditional forfeiture and scire facias, the bonding company petitioned for relief, claiming that the defendants had fled to Mexico. *Id*. At the evidentiary hearing, the bonding company argued that because there was not an enforceable extradition treaty between the United States and Mexico, it should be relieved from liability. *Id*. at 191. This court found that "the trial court correctly declined to grant relief . . . in all three cases on the basis of the defendants' flight to Mexico and the impossibility of extraditing." *Id*. at 194.

In *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 200 (Tenn. Crim. App. 2002), the surety sought relief, claiming that the sheriff's department had surrendered the defendant to the Immigration and Naturalization Service, which led to the defendant's being deported to Mexico. This court noted that "in entering into bail bond agreements involving aliens, sureties are necessarily cognizant of and assume the risk that, subsequently, the defendant will engage in conduct subjecting him to deportation proceedings." *Id.* at 205.

### Issues Raised by Defendant

Bail U Out claims that the trial court erred in finding that Mr. Barillas's nationality was "a factor to be considered by bonding companies in determining whether a bond should

be made." That is not exactly what the trial court found. The trial court correctly stated that our supreme court noted in *Shredeh* "that the nationality of the defendant should have been the subject of reasonable inquiry." *Shredeh*, 909 S.W.2d at 836. Our supreme court also observed in *Shredeh* that "the findings made by the trial court are conclusive for appellate purposes unless the evidence preponderates otherwise." *Id*. The trial court in this case found that Bail U Out should have considered the fact that Mr. Barillas was an "illegal alien" and that Bail U Out "was fully aware that the defendant was not a citizen of the United States" when it evaluated the risk in making the bond. The proof presented at the hearing clearly supports the trial court's findings. Whether a defendant is in the country illegally may properly be considered by bonding companies in assessing risk and determining whether a bond should be made. This issue is meritless.

Bail U Out next claims the trial court erred in finding full forfeiture of the bond was "an appropriate interpretation" of a bonding company's liability under Tennessee Code Annotated § 40-11-132 when a defendant has been deported from the United States. Based upon the record before us, however, Mr. Barillas was not deported. The August 11, 2023 "Order of the Immigration Judge" states that Mr. Barillas "made an application solely for voluntary departure in lieu of removal." The immigration court granted Mr. Barillas "pre-conclusion voluntary departure . . . in lieu of removal" on or before October 10, 2023, and ordered Mr. Barillas to provide to DHS his "passport or other travel documentation sufficient to assure lawful entry into the country to which [Mr. Barillas] is departing within 60 days of this order[.]" There is nothing in this record that shows what Mr. Barillas did after August 11, 2023, other than he failed to appear for his September 21, 2023 Sumner County court date. Mr. Barillas had over a month after the immigration court accepted his application for voluntary departure to apprise his bondsman or the trial court of his situation. Instead, he knowingly failed to appear in court to answer his pending charges. The trial court did not abuse its discretion in ordering forfeiture of the entire bond amount.

Next, Bail U Out questions whether it is "a reasonable requirement under Tennessee Code Annotated § 40-11-132 to require that bonding companies . . . cross international borders to return deported individuals to the [c]ourt." Mr. Gant explained that the "steps we've taken, we've tried to contact ICE and asked them [if we] could we get the paperwork." Mr. Gant further explained that, when the conditional forfeiture was issued, Bail U Out "contacted a lawyer to file the paperwork to present it to the [c]ourt to let [the court] know exactly where [Mr. Barillas] is." The Motion for Relief from Bond filed by counsel does not state *exactly* where Mr. Barillas is; it only states that "he has been deported to his country of origin" and that "he is not likely to reappear in court[.]" Mr. Gant never testified that he knew where Mr. Barillas was or that Bail U Out had attempted "to cross international borders" to return Mr. Barillas. The trial court never suggested that Bail U Out should have crossed international borders. Bail U Out is not entitled to relief on this issue.

Finally, Bail U Out claims that it met "its obligation under Tennessee Code Annotated section 40-11-132 in locating the Mr. Barillas and informing the [c]ourt of Mr. Barillas's whereabouts." There is no proof in the record that Bail U Out located Mr. Barillas, that Bail U Out informed the court of his whereabouts, that Mr. Barillas is in El Salvador, or that Mr. Barillas even left the United States. Section 132 allows the bondsmen to surrender the defendant in their exoneration based on several listed factors. Bail U Out never surrendered Mr. Barillas and did not meet its obligations under section 132 for exoneration. Bail U Out is not entitled to relief on this issue.

In the case sub judice, Mr. Gant stated that he "absolutely" knew before making the bond that Mr. Barillas was in the country illegally. That fact alone could subject Mr. Barillas to deportation proceedings and should have been considered by Bail U Out in evaluating the risk incident to making the bond. As stated previously, the "authority to relieve sureties from liability may only be exercised in extreme cases[.]" *Shredeh*, 909 S.W.2d at 836. "[A] ground for relief asserted by the surety will not constitute an 'extreme case' for purposes of Tenn[essee] Code Ann[otated section] 40-11-204 if it is the realization of a risk assumed by the surety in entering into the bail bond agreement." *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d at 204. The ground for relief asserted in the Motion was that Mr. Barillas failed to appear because he had been deported to his country of origin, but the record on appeal reflects that if Mr. Barillas has actually left the United States he did so via a voluntarily departure.

## *Conclusion*

The trial court found that "the bonding business was risky business" and that Bail U Out entered into the bonding agreement fully aware that Mr. Barillas was in the United States illegally. The trial court did not abuse its discretion by ordering forfeiture of the entire $65,000 bail. We affirm the judgment of the trial court.

s/ *Robert L. Holloway, Jr.*
ROBERT L. HOLLOWAY, JR., JUDGE